**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al.**

v.

**DATAPOINT CORPORATION (formerly doing business as Computer Terminal Corporation).**

Civ. A. Nos. SA–74–CA–90 and SA–72–CA–176.

United States District Court, W. D. Texas, San Antonio Division.

April 16, 1976.

Sylvian Roybal, Equal Employment Opportunity Commission, Denver, Colo., for plaintiff EEOC.

Luis M. Segura, San Antonio, Tex., for plaintiff, Helen Sierra.

John N. McCamish, Jr., San Antonio Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. WOOD, Jr., District Judge.

On the 16th day of March, 1976, came on for trial before the Court the above styled and numbered consolidated cause and the Court, having heard the testimony adduced at trial, reviewed all the documents and other evidence duly presented and admitted and having fully considered the arguments of counsel together with the records and file of the case, hereby enters its Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, Equal Employment Opportunity Commission ("EEOC") is an agency of the United States of America.

2. Datapoint Corporation is incorporated in the State of Texas and has its principal

place of business in San Antonio, Bexar County, Texas.

3. Since approximately November, 1969, Defendant has employed twenty-five or more persons and has been continuously engaged in interstate commerce.

4. The Defense Supply Agency is an agency of the United States which has been designated by the Office of Federal Contracts Compliance (another agency of the United States) to monitor Datapoint's compliance with Executive Order 11246, as amended.

5. Defendant has prepared Affirmative Action Plans for each calendar year beginning February 1, 1973, which plans have been designed to enhance the employment and advancement opportunities of Blacks, Mexican-Americans and females in all job categories. All of Datapoint's Affirmative Action Plans have been reviewed by the Defense Supply Agency and found to comply with the provisions of Executive Order 11246, as amended. The existence and content of Defendant's first Affirmative Action Plan was well known to Plaintiff EEOC prior to the institution of its suit and copies of subsequent plans and Defense Supply Agency action thereon were also well known to Plaintiff EEOC.

6. Both Title VII (42 U.S.C. 2000e et seq.) and Executive Order 11246, as amended, prohibit among other things employment discrimination based upon race, color, sex or national origin.

7. The Court has reviewed all of Defendant Datapoint's employment practices Company wide, including but not limited to, its practices concerning recruiting, hiring, job assignments, promotions, transfers, treatment of disabled employees, wages, fringe benefits, reprimands, discharges, tests (as this term is defined by EEOC regulation), and all other terms and conditions of employment and finds that it has engaged in no unfair employment practice(s) against the individual Plaintiff, Helen Sierra, or against any other employee, former employee or applicant for employment in violation of Title VII of the Civil

Rights Act of 1964, as amended, or the Civil Rights Act of 1866 (42 U.S.C. Sec. 1981) from November 1, 1969 until March 16, 1976.

8. The Defendant did not require a high school diploma as a precondition of employment in any position.

9. Alternatively, if a high school diploma was required as a precondition for any employment, which fact has not been proved by Plaintiff by a preponderance of the evidence, this requirement had no disparate impact on either Blacks, Mexican-Americans or women.

10. Plaintiff EEOC failed to conciliate the EEOC charges of Floris Ricks, Daniel Moreno, and J. Loera in good faith as required by Title VII.

11. Plaintiff EEOC stipulated that it was not relying upon the EEOC charge of individual Plaintiff Sierra to form the jurisdictional basis for its suit.

12. Pursuant to the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir., 1974), the Court further finds that Defendant Datapoint Corporation is entitled to an award of attorneys' fees of Fifty-six thousand five hundred forty and no/100 dollars ($56,540.00) for preparation and trial of this cause to be taxed as costs against Plaintiff, Equal Employment Opportunity Commission.

13. Defendant should be awarded an additional attorneys' fee of Ten thousand and no/100 dollars ($10,000) to be taxed as costs against the Plaintiff, Equal Employment Opportunity Commission, in the event of an appeal by Plaintiff Commission to the Fifth Circuit Court of Appeals.

14. Defendant should be awarded an additional attorneys' fee of Seven thousand five hundred and no/100 dollars ($7,500.00) to be taxed as costs against the Plaintiff, Equal Employment Opportunity Commission, in the event that the Plaintiff Commission should apply for certiorari to the United States Supreme Court in this cause. Further, in the event that such application, if any, should be granted and Defendant is

subsequently required to make oral argument, it should be awarded an additional attorneys' fee of Three thousand and no/100 dollars ($3,000.00) if Defendant prevails in the Supreme Court, such amount also to be taxed as costs against the Plaintiff Commission.

15. Pursuant to the criteria set forth in *Johnson v. Georgia Highway Express*, supra, Defendant should be awarded an attorneys' fee of Three thousand and no/100 dollars ($3,000.00) to be taxed as costs against the Plaintiff, Helen Sierra.

16. The costs incurred by Defendant Datapoint Corporation incident to hiring Drs. Ramsay, Fulmer and Hill and Mr. Cameron as outside experts including their fees (and the transportation and lodging of Dr. Ramsay) should be taxed as costs in this suit and paid by Plaintiff Equal Employment Opportunity Commission. The Court further finds that fees paid by Datapoint in the amount of Four thousand seven hundred fifty and no/100 dollars ($4,750.00) to EEO Research Associates, Inc. for statistical data (Defense Exhibit PP) were reasonable and necessary expenses incurred incident to Datapoint's defense and should be taxed as costs to be paid by the EEOC. The Court finds that the testimony and trial preparation incident thereto of each of the aforementioned experts was necessary to Defendant's defense and that fees and expenses incurred by Datapoint in connection with the employment of these experts were reasonable. Costs should be taxed against the EEOC as follows:

| | | |
|---|---|---|
| 1. | Dr. Ramsay | $13,000.00 |
| 2. | Dr. Hill | 2,400.00 |
| 3. | Mr. Cameron | 1,200.00 |
| 4. | EEO Research Associates | 4,750.00 |
| 5. | Dr. Fulmer | No Charge |
| | Total: | $21,350.00 |

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this case pursuant to 42 U.S.C., Sec. 1981, and 42 U.S.C., Sec. 2000e et seq.

2. Defendant has not engaged in any illegally discriminatory employment practice, including but not limited to its employment practices which concern recruiting, hiring, job assignments, promotions, transfers, treatment of disabled employees, wages, fringe benefits, reprimands, discharges, and all other terms and conditions of employment from November 1, 1969, to date.

3. Plaintiff, Helen Sierra, was not discharged by Defendant, in whole or in part, because of her national origin, nor has she in any way been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, or the Civil Rights Act of 1866 (42 U.S.C., Sec. 1981).

4. No employment tests utilized by Datapoint, including but not limited to the test technician test, the typing test and the Purdue Pegboard test were designed, intended or used by Defendant to discriminate on the basis of race, color, sex or national origin. Further, each of Defendant's tests were "professionally developed" ability tests within the meaning of Section 703(h) of Title VII (42 U.S.C., Sec. 2000e–2(h)). Further, all tests utilized by Datapoint from November 1, 1969 to March 6, 1976 were "valid" as that term is defined in applicable EEOC regulations.

5. Defendant has in no way limited, segregated or classified its employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee because of such individual's race, color, sex or national origin from November 1, 1969 to March 16, 1976.

6. Defendant had fewer than twenty-five employees at all times prior to November 1, 1969, and consequently was not covered by the provisions of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C., 2000e et seq.).

7. No employment practice or act engaged in by Defendant, whether intentional or unintentional, has been caused in whole or in part by considerations of race, color, sex or national origin from November 1, 1969 until March 16, 1976. Nor has any employment practice or act of Defendant

had the effect of discriminating against any individual in whole or in part on the basis of race, color, sex or national origin. Plaintiff EEOC is a proper representative of all Black, Mexican-American and female employees and former employees as well as all Black, Mexican-American and female applicants for employment.

8. The rights and interests of all past and present Black, Mexican-American and female employees and applicants for employment have been fully, fairly and adequately represented by the Plaintiff, Equal Employment Opportunity Commission, in this cause. And such employees and applicants for employment, including but not limited to persons which may have filed a charge with the Equal Employment Opportunity Commission prior to the beginning of trial in this case (March 16, 1976), have each received the best notice practicable of this action and shall be bound by the Judgment in this case, with the exception of Mrs. Norma Vela who filed notice with the Court that she did not wish to be bound by the Judgment.

9. No employment practice, past or present, in which Defendant has engaged has in any way constituted a pretext for employment discrimination made illegal by Title VII. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

10. The Court finds that Datapoint is clearly the "prevailing party" within the meaning of Section 706(k) (42 U.S.C.A. 2000e–(5)(k)) of Title VII and should be allowed its attorney's fees and expert witness expenses as part of the costs of defending this action against the Plaintiff, EEOC, and in part against the Plaintiff, Sierra.

11. The Court, having considered each of the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir., 1974) as same are applicable to this Defendant, including the time and labor required by both experienced and inexperienced counsel, the novelty and difficulty of the questions included in this cause, the skill requisite to perform the legal services properly, the preclusion of other employment, the customary fee for similar work in the community, time limitations imposed by the circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the nature and length of the professional relationship with the client and awards in similar cases, concludes that Defendant Datapoint Corporation should be awarded an attorney's fee of Fifty-six thousand five hundred forty and no/100 dollars ($56,540.00) for preparation and trial of this cause to be taxed as costs against Plaintiff Equal Employment Opportunity Commission.

12. Further, in the event of an appeal by Plaintiff Equal Employment Opportunity Commission to the Fifth Circuit, Defendant should be awarded an additional attorney's fee of Ten thousand and no/100 dollars ($10,000.00) to be taxed as costs against the Plaintiff Commission.

13. Further, in the event Plaintiff Commission should apply for certiorari to the United States Supreme Court in this cause, Defendant should be awarded an additional attorney's fee of Seven thousand five hundred and no/100 dollars ($7,500.00) to be taxed as costs against the Plaintiff Commission in this cause. Should such application be granted and Defendant is required to make oral argument, it should be awarded an additional attorney's fee of Three thousand and no/100 dollars ($3,000.00) if it prevails in the Supreme Court.

14. In addition to the foregoing, Defendant should be awarded an attorney's fee of Three thousand and no/100 dollars ($3,000.00) to be taxed as costs against the Plaintiff, Helen Sierra. In arriving at an attorney's fee of Three thousand and no/100 dollars ($3,000.00) to be awarded against Plaintiff Sierra, the Court has also considered the guidelines set forth in *Johnson v. Georgia Highway Express*, supra, as well as the remedial purposes of the statute, and consequently has limited the award of attorney's fees to Defendants accordingly. A much higher fee award to Defendant against both Plaintiffs would clearly be ap-

propriate under the evidence presented in this case.

15. The costs incurred by Defendant Datapoint Corporation incident to hiring Drs. Ramsay, Fulmer and Hill and Mr. Cameron as outside experts including their fees (and the transportation and lodging of Dr. Ramsay) should be taxed as costs in this suit and paid by Plaintiff Equal Employment Opportunity Commission. The Court further finds that fees paid by Datapoint in the amount of Four thousand seven hundred fifty and no/100 dollars ($4,750.00) to EEO Research Associates, Inc. for statistical data (Defense Exhibit PP) were reasonable and necessary expenses incurred incident to Datapoint's defense and should be taxed as costs to be paid by the EEOC. The Court finds that the testimony and trial preparation incident thereto of each of the aforementioned experts was necessary to Defendant's defense and that fees and expenses incurred by Datapoint in connection with the employment of these experts were reasonable. Costs should be taxed against the EEOC as follows:

| 1. | Dr. Ramsay | $13,000.00 |
|---|---|---|
| 2. | Dr. Hill | 2,400.00 |
| 3. | Mr. Cameron | 1,200.00 |
| 4. | EEO Research Associates | 4,750.00 |
| 5. | Dr. Fulmer | No Charge |
| | Total: | $21,350.00 |

16. Plaintiffs have failed to show that any employment practice of Defendant has had an adverse impact on Blacks, Mexican-Americans or females. Defendant has affirmatively demonstrated that it has carefully analyzed its job requirements and that same are without exception job related.

17. Defendant has affirmatively demonstrated that all of its job requirements and practices, including but not limited to, requirements relating to recruiting, hiring, job assignments, promotions, transfers, disability layoffs, wages, fringe benefits, reprimands, discharges, and all other terms and conditions of employment within each of the following job categories, including but not limited to those in which a test is used, are manifestly related to the job in question and such has been the case from November 1, 1969 to the date of trial (March 16, 1976). *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

1. Officials and Managers
2. Professional
3. Technicians
4. Sales Personnel
5. Clerical
6. Craftsmen
7. Operative

18. All Findings of Fact herein may be considered Conclusions of Law, if appropriate and vice versa. All Findings of Fact and Conclusions of Law not made specifically herein are deemed made in support of Judgment for the Defendant.

19. Costs other than attorneys' fees in this cause incurred prior to April 24, 1974 shall be taxed against the Plaintiff, Helen Sierra. Court costs (other than attorneys' fees and experts' fees and expenses) incurred from April 24, 1974 to date shall be taxed against the Plaintiff, Equal Employment Opportunity Commission.

20. Both procedurally and on the merits neither the Plaintiff, Equal Employment Opportunity Commission, nor the Plaintiff, Helen Sierra, are entitled to injunctive relief, a declaratory judgment or any other relief prayed for in this cause. Judgment should be entered accordingly for the Defendant, Datapoint Corporation.