EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and Helen Sierra

v.

DATAPOINT CORPORATION (formerly doing business as Computer Terminal Corporation).

Civ. A. Nos. SA–74–CA–90, SA–72–CA–176.

United States District Court, W. D. Texas, San Antonio Division.

June 28, 1978.

---

Luis M. Segura, San Antonio, Tex., James P. Scanlan, EEOC, Washington, D.C., Sandy Waters, EEOC Regional Office, Denver, Colo., for plaintiffs.

John N. McCamish, Jr., Craig L. Moffatt, San Antonio, Tex., for defendant.

## MEMORANDUM ORDER

JOHN H. WOOD, Jr., District Judge.

This is a Title VII [1] case remanded by the United States Court of Appeals for the Fifth Circuit,[2] for the District Court to reconsider an assessment of attorney's fees against the EEOC in light of *Christiansburg Garment Co. v. EEOC.*[3] Only two awarded costs and attorney's fees. 412 F.Supp. at 407–08. While the case was being considered on appeal the Supreme Court announced controlling standards for an award of attorney's fees for a prevailing defendant in a Title VII case. *Christiansburg Garment, supra.* The United States Court of Appeals for the Fifth Circuit affirmed all issues on appeal other than the award of attorney's fees. *EEOC v. Datapoint Corp.*, 570 F.2d 1264 (5th Cir., 1978).

---

1. 42 U.S.C. § 2000e *et seq.*

2. *EEOC v. Datapoint Corp.*, 570 F.2d 1264 (5th Cir., 1978). The district court opinion is *EEOC v. Datapoint Corp.*, 412 F.Supp. 406 (W.D.Tex., 1976).

3. 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). At the original trial the District Court had held in favor of the Defendant and had

questions are presented on remand. First, was any claim of the EEOC frivolous, unreasonable, or groundless, or pursued by the EEOC after the claim clearly became so.[4] Second, if any claims could be so characterized, should this Court, in the exercise of its sound discretion, award attorney's fees to the defendant.

■ The Court has reviewed the entire record and file of this case, including the transcript and exhibits introduced at trial. On June 12, 1978, the Court held an additional hearing on the issue of attorney's fees. The Court concludes that it may in its discretion assess attorney's fees against the EEOC because the EEOC litigated claims which met the tests of *Christianburg.* The Court further concludes that in the exercise of its sound discretion, attorney's fees should be awarded to the Defendant. The Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. In 1972 the EEOC, after investigating Helen Sierra's claim against Datapoint Corporation and finding no cause for several claims, sent her a "right to sue" letter. On May 22, 1972 Sierra sued Datapoint Corporation under Title VII and sought to maintain her suit as a class action.[5]

2. In October 1973 the EEOC instituted conciliation proceedings with Datapoint Corporation. From before the institution of the Sierra suit to the time it instituted conciliation proceedings the EEOC had investigated other charges of discrimination against Datapoint and had found no cause for many claims of discrimination.

3. The EEOC's posture during "conciliation" was that Datapoint must adopt racial quotas for hiring and for transfer and that the EEOC would only negotiate on the specific number for the quotas.[6] The EEOC's position remained inflexible even though in October 1973, Datapoint Corporation had provided the EEOC with documents reflecting the minority composition of Datapoint's work force. The EEOC knew that the minority composition of Datapoint's work force had increased after May 1972. The EEOC also knew that from October 1973 until February 1974, Datapoint had increased its hiring of minorities. Nevertheless, the EEOC insisted that Datapoint adopt enforceable racial hiring quotas, and terminated conciliation when Datapoint would not agree to do so.[7]

4. The EEOC knew that the class action question was pending in the Sierra case during the period when the EEOC was conciliating with Datapoint.

5. On March 3, 1974, the Court refused to certify Helen Sierra's action as a class action.

6. On April 24, 1974, the EEOC filed suit against Datapoint Corporation. In its global complaint, the EEOC charged Datapoint Corporation with:

a. discrimination in the hiring of minorities in job categories of officials and managers, professionals, technicians, salesworkers, office and clerical, craftsmen, and operators;

---

4. On May 25, 1975, this Court, under the provisions of Rule 42(a) Fed.R.Civ.P. consolidated a prior pending case brought by Helen Sierra, with the EEOC's suit. The consolidated cases were tried together and remained consolidated on appeal. Because the private plaintiff's case involves substantially different analysis and briefing on the remanded issue of attorney's fees, the Court has separated the cases and instructed that Judgment be entered in the EEOC case under the provisions of Rule 54(b) Fed.R.Civ.P.

5. Sierra's suit was subsequently consolidated with the EEOC's suit under the provisions of Rule 42(a) Fed.R.Civ.P.

6. The EEOC had apparently decided to seek enforceable hiring quotas as its goal in conciliation. *See Teamsters v. United States,* 431 U.S. 324, 330 at n. 4, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). However, hiring and transfer quotas undertaken by the defendants in *Teamsters* was entered under the aegis of the Court as part of a settlement of a lawsuit. Voluntarily adopted hiring quotas are of questionable legality. *Weber v. Kaiser Aluminum & Chemical Corp.,* 563 F.2d 216, 221 (5th Cir., 1977).

7. At the original trial the Court had found that the EEOC had failed to conciliate in good faith. *EEOC v. Datapoint Corp.,* 412 F.Supp. 406, 407 (W.D.Tex., 1976).

b. failure to recruit and to hire women into the job categories of officials and managers, professionals, technicians, salesworkers, office and clerical, craftsmen, and operators;

c. limiting, segregating, and classifying black, female, and Spanish-surnamed American employees and applicants for employment in such a way as to deprive them of employment opportunities; and

d. discrimination against blacks, women and Spanish-surnamed Americans in respect to compensation, terms, conditions, and privileges of employment because of their race, color, sex, and national origin.

The EEOC claimed that policies and practices, including certain tests employed by Datapoint, were discriminatory or had a discriminatory impact on minorities and on females.[8] The EEOC sought a permanent injunction, back pay for all affected individuals from July 26, 1968, and costs. In short, the EEOC filed a very comprehensive class action.

7. The EEOC sought vigorously to maintain its suit as a class action and, at the EEOC's own insistance, was permitted to proceed on all claims presented in its original petition as the class representative.[9]

 8. During discovery the EEOC engaged in contumacious behavior, continually failing to permit discovery and to observe the orders of the Court.[10]

---

**8.** The EEOC apparently used a form pleading. *See EEOC v. D. H. Holmes Co., Ltd.*, 556 F.2d 787, 793 (5th Cir., 1977) (description of similar EEOC pleading.)

**9.** On May 8, 1975, the EEOC filed its Motion to Define Nature and Scope of Commission Suit, seeking to maintain its action as a class action outside of Rule 23 Fed.R.Civ.P. The Court, on finding that the EEOC was an adequate representative of the class, certified the EEOC as representative under the provisions of Rule 23 Fed.R.Civ.P. *EEOC v. Datapoint Corp.*, 570 F.2d at 1268; *See EEOC v. D. H. Holmes Co., Ltd.*, 556 F.2d 787 (5th Cir., 1977). The important fact here is the clear intent of the EEOC to seek class-wide relief, rather than whether or not the EEOC is bound by Rule 23 Fed.R.Civ.P. *See EEOC v. D. H. Holmes Co., Ltd., supra.*

**10.** The Court in these findings is not relying on any specific discovery act or failure to act as a ground for the Court's finding of unreasonableness. The Court is well aware that a certain amount of antagonism is inevitable during discovery and is to be expected. The Court has adequate discretion under the applicable discovery rules to prevent harassment of parties and to control abuses of the discovery process. The Court is expressly not assessing attorney's fees based on any act of discovery engaged in by the EEOC in violation of Rule 37(f) Fed.R. Civ.P. Nevertheless, apart from any specific discovery problems in this case which were handled appropriately at the time, the EEOC's conduct during discovery may be considered by the Court as evidence of the reasonableness of the EEOC's litigation efforts. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422–23, 98 S.Ct. 694, 701, 54 L.Ed.2d 648, 657, 658 n.20 (1978).

During the course of discovery the EEOC failed to develop any evidence that it did not already have in its possession in October 1973. The EEOC failed to provide discovery of experts even though discovery from experts is routine in this Court. The government is a wealthy litigant and can, if it so choses, make litigation so expensive as to prohibit the defense of legal rights. *Christiansburg Garment, supra*, 434 U.S. at 422–23, 98 S.Ct. at 701, 54 L.Ed.2d at 657, 658 n.20. Because of the peculiar power of the government litigator, he is subject to ethical consideration beyond the ordinary litigator. *See e. g.* Ethical Consideration 7–14, Title 14, App. Art. 12 § 8 (Texas 1970):

"A government lawyer who has discretionary power relative to litigation should refrain from instituting or continuing litigation that is obviously unfair. A government lawyer not having such discretionary power who believes there is a lack of merit in a controversy submitted to him should so advise his superiors and recommended the avoidance of unfair litigation. A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results."

The Court rejects any inference that a parade of government attorneys, each unfamiliar with the case, caused delay and expense in discovery. The Court deems it significant that during the course of discovery, Defendant deposed various officials of the EEOC, both in Washington and Denver, who had apparent authority to decide whether this litigation should continue or cease. No ostensibly responsible official of the EEOC was aware of the factual basis of this suit. The Court admits to not understanding how the Chief of the EEOC Trial Division nationwide, who was specifically

9. The EEOC never once even intimated that it would not represent classes on all claims filed in its original petition. The EEOC never amended its complaint. The EEOC's pretrial order recited as still actively in issue virtually every claim present in the EEOC's original complaint.

10. On the day of trial, without prior notice to either the Defendant or to the Court, the EEOC attempted to abandon;

 a. its claim that Defendant engaged in discriminatory promotion policies;
 b. its claim that Defendant discriminated with respect to terms, conditions, and privileges of employment; and
 c. all claims involving any conduct by defendant in the years 1968, 1969, 1972, 1974, 1975, and 1976 to date of trial.

By disclaiming these discrimination claims the EEOC effectively announced its refusal to pursue not less than 90% of the case it originally filed. Nevertheless, Defendant timely objected to the EEOC's trial conduct and made affirmative evidentiary showings that it had not violated Title VII with respect to any of its employment practices at any time from 1968 to the date of trial.

11. At trial the EEOC declared it was abandoning its claim that Defendant failed to recruit and to hire minorities in the categories of salesworker and craftsmen. The EEOC also abandoned its claim that Defendant failed to recruit and to hire women as salesworkers.

12. At trial the EEOC limited its proof to certain job categories in certain years. The EEOC offered evidence only on claims of discrimination in the hiring of minorities in the job categories of office and clerical, officials and managers, professionals, and operatives for the years 1970, 1971, and 1973. Even then the EEOC only presented evidence on two job titles in the professional group, instead of the entire group of professionals.

13. The evidence presented by the EEOC to support its claims was entirely numerical, the majority of the raw numbers having been selected from documents given the EEOC by Defendant in October 1973 during conciliation. Even though the EEOC knew before the time of trial that its evidence would be numerical, the EEOC failed to present an expert on statistics to explain the significance, if any, of the EEOC's numerical evidence. The EEOC also failed to present an expert to validate the statistical sampling upon which the EEOC relied.[11]

---

charged by the General Counsel with responsibilities for this case, could not testify to a single fact or circumstance, real or suspected, to support the Commission's claims.

11. On appeal the EEOC admitted that it had made serious tactical errors at trial. Even though the Court is mindful of the Supreme Court's admonition in *Christiansburg* not to engage in post-hoc reasoning,

 ". . . [I]t is important that a district court resist the understandable temptation to engage in post-hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable and without foundation," 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed. 648, 657. the Court's caution was, as the Court explained, that the vicissitudes of trial or a change in the law could easily change the outcome of a lawsuit.

 ". . . No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.*

The EEOC's failure to explain and defend "raw numbers" with expert testimony could not in the concreteness of this case be considered a failure to prevail on the merits because of the vicissitudes of trial or changes in the law. *See* Note 14, *infra.* The Court, mindful of the admonition of the Supreme Court, nevertheless considers that failure of the EEOC to be evidence supporting a finding of unreasonable litigation effort on the part of the EEOC. However vigorously the EEOC now argues that the agency actually believed that Datapoint practiced discriminatory hiring practices, that argument is ill founded. The standard of *Christiansburg* is objective. What the EEOC actually did during the trial of this case is evidence of the reasonableness of the EEOC's litigation. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422–23, 98 S.Ct. 694, 701, 54 L.Ed.2d 648, 657, 658 n.20 (1978).

14. The only evidence offered by the EEOC at trial was information that had been available to the EEOC since October of 1973.[12] The EEOC knew that Defendant would incur substantial expenses to investigate and to defend across the board charges of discrimination in *all* of its employment practices over a period of years.

15. The EEOC's claim of discrimination in promotion policies was groundless. The EEOC's claim of discrimination with respect to terms, conditions, and privileges of employment was groundless. For approximately six years prior to the trial of this lawsuit, the EEOC had investigated discrimination claims against Datapoint Corporation and had found no cause. The EEOC had documents in its possession in October 1973 showing that Defendant's minority composition and hiring had increased. On appeal the EEOC admitted knowing about those increases. Under these circumstances the EEOC's abandonment of these claims on the day of trial indicated that the EEOC itself believed the claims to be groundless.

■ 16. The claims of discrimination in promotion policies and discrimination with respect to terms and conditions of employment were brought unreasonably by the EEOC. The EEOC knew the claims to be groundless and unreasonable. Nevertheless, the EEOC brought the claims. The EEOC, through its own efforts, was certified as a class representative for those claims. The EEOC attempted extensive discovery on the claims and then abandoned the claims on the day set for trial. The mere abandonment of a claim is a common occurrence. Under the circumstances where the EEOC had the facts peculiarly within its reach before it ever filed suit, where the EEOC became certified as a class representative, and yet failed to develop any further evidence, and then abandoned the claims without notice, the EEOC was acting as an unreasonable litigant. The EEOC's failure to give notice to the Court, even though it was a class representative, and failure to notify the opposite party were not the acts of a reasonable litigant.

■ 17. The EEOC brought its claims of discriminatory promotion policies and discrimination with respect to terms, conditions, and privileges of employment vexatiously. In addition to knowing the groundlessness of those claims, the EEOC knew that bringing those groundless claims would subject Defendant to increased costs by putting Defendant to the expense of developing and presenting a rebuttal case. For example, Defendant had to go to great expense to prepare its testimonial and documentary presentation on employment testing, an expense that was reasonably foreseeable by the EEOC. The abandonment of claims is common, but where a litigant initially brings claims it knows to be groundless, seeks and receives class certification on those claims, and continues pressing worthless claims for the purpose of increasing the opposition's litigation expense, the litigant is acting beyond the bounds of being an adversary and is being vexatious.

18. The EEOC continued to litigate its claim of discrimination in promotion policies and its claim of discrimination with respect to terms, conditions, and privileges of employment even after such claims were clearly groundless.

19. The EEOC's claim that Datapoint used discriminatory employment tests was groundless. The EEOC's claim was brought vexatiously and was kept in issue by the EEOC for the sole purpose of increasing Defendant's expenses and to increase the nuisance value of the suit.

20. The EEOC's claims of discrimination in hiring minorities and females in the years 1968, 1969, 1972, 1974, and 1975 were groundless. Since October 1973 the EEOC had the majority of those hiring statistics in its possession, yet the EEOC abandoned these claims on the morning of trial.[13]

---

12. *See* Footnotes 10 and 11, *supra*; Finding No. 3, *supra*.

13. Although the EEOC never explained why it abandoned those years, the Court infers that the numbers of minorities hired during those years was not helpful to the EEOC's case.

21. The EEOC's claims of discrimination in hiring minorities and females in the years 1968, 1969, 1972, 1974, and 1975 were brought unreasonably by the EEOC. The EEOC had Datapoint's hiring history in October 1973 before it brought suit. The EEOC sought to represent a class and was certified to do so. The EEOC failed to develop any additional evidence during discovery. On the morning of trial, without notice to the Court or the Defendant, the EEOC abandoned its claim.

22. The EEOC's claim of discrimination in hiring minorities and females in the years 1968, 1969, 1972, 1974, and 1975 was pressed vexatiously by the EEOC. The EEOC knew that its action would cause substantial expense to Defendant to prepare and to defend against class action allegations of discrimination in hiring of minorities and females since 1968.

23. The EEOC claims which went to trial were unreasonably pressed on the part of the EEOC. The EEOC had had the hiring data for 1970, 1971, and 1973 in its possession before it filed suit. The EEOC had had over two years to develop its statistical case. The EEOC failed to develop any other evidence, for example, through deposition of rejected applicants. The EEOC was going to trial with raw numbers. The EEOC failed to qualify an expert to explain the significance of its "raw numbers." The EEOC failed to qualify an expert to attest to the validity of the EEOC's numerical sample.[14]

24. The EEOC's case was brought and prosecuted in bad faith. Prior to filing its complaint the EEOC had investigated many claims against Datapoint. The EEOC had known of the Sierra suit and the possibility of Sierra being certified as a class action while the EEOC was engaged in conciliation. The EEOC had taken a posture in conciliation based on the leverage it thought it had from the pending Sierra suit. After Defendant had borne all the expenses of discovery in the Sierra suit, Sierra was denied class certification. To regain the leverage it had lost, the EEOC initiated a lawsuit based on broad allegations of discrimination, became the representative of a class, engaged the Defendant in expensive and burdensome discovery, while developing no additional evidence itself, and abandoned the majority of its claims at trial. The majority of the EEOC's claims were frivolous and were known by the EEOC to be frivolous at the time it filed its initial complaint. The EEOC had embarked on a course of conduct and used its position as a government agency to engage in burdensome litigation having no legal or factual basis.

25. For the reasons stated in its Findings of Fact 12 and 13, and Conclusions of Law 11 and 12 of its previous opinion which is incorporated by reference[15] the Court

14. Statistical cases are nothing new to government litigators. A vast body of law has been developed with regard to cases in jury selection, *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and in Title VII cases, *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). *Hazelwood* and *Teamsters* both cite the statistical methodology from *Castaneda*, for explanation of statistical significance, standard deviation, and the application of statistical analysis to Title VII discrimination cases. It is simply inconceivable that the EEOC—experienced in litigating statistical cases—would go to trial on a purely statistical case without the services of an expert statistician. *See Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974).

15. *EEOC v. Datapoint Corp.*, 412 F.Supp. 406 (W.D.Tex., 1976)

"12. Pursuant to the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir., 1974), the Court further finds that Defendant Datapoint Corporation is entitled to an award of attorneys' fees of Fifty-six thousand five hundred forty and no/100 dollars ($56,540.00) for preparation and trial of this cause to be taxed as costs against Plaintiff, Equal Employment Opportunity Commission.

"13. Defendant should be awarded an additional attorneys' fee of Ten thousand and no/100 dollars ($10,000) to be taxed as costs against the Plaintiff, Equal Employment Opportunity Commission, in the event of an appeal by Plaintiff Commission to the Fifth Circuit Court of Appeals." *Id.* at 407–08.

"11. The Court, having considered each of the criteria set forth in *Johnson v. Georgia*

reaffirms its earlier award in the sum of $66,540.00 which is a reasonable attorney's fee for the defense of this cause.

26. Because the vast majority of the EEOC's claims were abandoned, and because the vast majority of Defendant's time and expense was spent before trial in the preparation of a defense to claims that were ultimately abandoned, the Court allocates 90% of the attorney's fees or a sum of $59,886.00 to the preparation of and presentation of a defense to claims brought by the EEOC and abandoned at the day of trial. Each of those abandoned claims was frivolous, groundless, brought vexatiously, or brought unreasonably. Each separate ground supports the award of attorney's fee. The remaining 10% or a sum of $6,654.00 is allocated to the claims actually prosecuted by the EEOC. On the finding that the entire case was brought unreasonably and in bad faith the Court awards that sum of $6,654.00 to Defendants also.

## CONCLUSIONS OF LAW

■ 1. This Court may in its discretion award attorney's fees to the prevailing Defendant in a Title VII case on a finding that Plaintiff's claims were without foundation, or were brought vexatiously, or were brought unreasonably, or that Plaintiff continued to litigate after they clearly became so. 42 U.S.C. § 2000e–5(k). *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

■ 2. The Court may assess attorney's fees against a litigant who litigates in bad faith. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

3. The Court in the exercise of its sound discretion assesses attorneys fees against the EEOC in the amount of $66,540.00. 42 U.S.C. § 2000e–5(k); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir., 1974).

4. All Findings of Fact may be considered Conclusions of Law, if appropriate. All Conclusions of Law may be considered Findings of Fact, if appropriate. All Findings of Fact and Conclusions of Law not made specifically are deemed made in support of Judgment for the Defendant.

*Highway Express, Inc.*, 488 F.2d 714 (5th Cir., 1974) as same are applicable to this Defendant, including the time and labor required by both experienced and inexperienced counsel, the novelty and difficulty of the questions included in this cause, the skill requisite to perform the legal services properly, the preclusion of other employment, the customary fee for similar work in the community, time limitations imposed by the circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the nature and length of the professional relationship with the client and awards in similar cases, concludes that Defendant Datapoint Corporation should be awarded an attorney's fee of Fifty-six thousand five hundred forty and no/100 dollars ($56,540.00) for preparation and trial of this cause to be taxed as costs against Plaintiff Equal Employment Opportunity Commission.

"12. Further, in the event of an appeal by Plaintiff Equal Employment Opportunity Commission to the Fifth Circuit, Defendant should be awarded an additional attorney's fee of Ten thousand and no/100 dollars ($10,-000.00) to be taxed as costs against the Plaintiff Commission." *Id.* at 409.