Helen SIERRA

v.

**DATAPOINT CORPORATION (Formerly doing business as Computer Terminal Corporation).**

No. SA–72–CA–176.

United States District Court,
W. D. Texas,
San Antonio Division.

Oct. 10, 1978.

**669**

## MEMORANDUM ORDER

JOHN H. WOOD, Jr., District Judge.

This is a Title VII[1] case involving an assessment of attorney's fees against a private plaintiff. At the original trial the Court awarded defendant $3,000 as attorney's fees.[2] After affirming on the merits the United States Court of Appeals for the Fifth Circuit[3] remanded the case for this Court's reconsideration of its assessment of attorney's fees in light of the standards announced in *Christianburg Garment Co. v. EEOC.*[4]

After reviewing the entire file and record of the case and after an additional hearing on the issue of attorney's fees, the Court concludes that Plaintiff's action falls within the scope of *Christianburg Garment.* The Court, in its sound discretion, therefore, assesses $3,000 against Plaintiff as a reasonable sum for Defendant's attorney's fees. The Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Plaintiff, a Mexican-American, was hired by Defendant in October, 1969. Plaintiff received satisfactory ratings and raises from her initial employment to December, 1970. In December, 1970, Defendant again reviewed Plaintiff's performance. Her rating was satisfactory and she was given another raise. Plaintiff, however, was not satisfied with the amount of her raise.[5]

Luis M. Segura, San Antonio, Tex., for plaintiff.

John N. McCamish, Jr., Craig L. Moffatt, Soules & McCamish, San Antonio, Tex., for defendant.

2. Even though Plaintiff had gone to her supervisor for an explanation and was told that Defendant was financially unable

1. 42 U.S.C. § 2000e *et seq.*

2. *EEOC v. Datapoint Corporation,* 412 F.Supp. 406 (W.D.Tex.1976).

3. *EEOC v. Datapoint Corporation,* 570 F.2d 1264 (5th Cir. 1978).

4. 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The Court had consolidated the case styled *Helen Sierra v. Datapoint Corporation,* (SA–72–CA–176), with a case styled *EEOC v. Datapoint Corporation,* (SA–74–CA–90). The consolidated cases were tried together and appealed together. While the consolidated cases were on appeal, the United States Supreme Court announced controlling standards for an

award of attorney's fees to a prevailing defendant in a Title VII case. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The United States Court of Appeals for the Fifth Circuit affirmed the decision of this Court on all issues other than the issue of attorney's fees. After remand a separate judgment was entered on the question of attorney's fees against the EEOC. *EEOC v. Datapoint Corp.,* 457 F.Supp. 62 (W.D.Tex. 1978).

5. Plaintiff testified that although she received an 8 cent an hour raise, she thought that she should have received an 18 cent an hour raise.

to give larger raises, Plaintiff was not satisfied. Plaintiff stopped her production line to discuss her wages with the other employees on the line. She left her production line to stop other lines.

3. Because Plaintiff had seriously interfered with Defendant's production, Plaintiff was discharged the following day. At the time she was discharged Plaintiff knew that she was discharged for interfering with production.

4. On December 22, 1970, Plaintiff filed a charge with the NLRB. In her sworn statement to the NLRB, Plaintiff charged that Defendant had discharged her because of her union activities.[6]

5. At the time she filed her NLRB charge, Plaintiff also filed a complaint with the EEOC. In her sworn statement to the EEOC she stated that Defendant had discharged her because of her national origin. In addition, Plaintiff alleged that Defendant discriminated against Mexican-Americans in wages, hiring, promotions, and discharges.

6. In February, 1971, Plaintiff sought unemployment benefits from the Texas Employment Commission. Plaintiff stated to the TEC that she was discharged for participation in union activities. The Commission, after having investigated Plaintiff's claim and having determined that she was discharged for job-related misconduct, disallowed unemployment compensation.

7. In April, 1971, Plaintiff accepted a check from Defendant as a settlement for back wages arising from her discharge and withdrew her claim pending before the NLRB. Prior to accepting that settlement Plaintiff never told Defendant of her EEOC complaint. In early May, 1971, the EEOC investigated Plaintiff's charges against Defendant. The EEOC found that Defendant did not discriminate against Mexican-Americans in hiring or wages.[7]

8. In early 1972, Plaintiff requested a "right to sue" letter from the EEOC. She received her letter on May 10, 1972.[8]

9. On May 22, 1972, Plaintiff filed a Title VII action against Datapoint Corporation. In her complaint Plaintiff alleged that she was discharged because of her national origin in violation of Title VII. Plaintiff alleged that Defendant discriminated against Mexican-Americans in hiring, wages, promotions, and discharges. Plaintiff sought certification as the class representative of all past and present Mexican-American employees and all future Mexican-American applicants. Plaintiff's class action claims were virtually identical to the charges she had filed with the EEOC and which the EEOC had investigated and determined to be insubstantial.[9] By filing a class action Plaintiff knew that Defendant's discovery burden would be substantially increased. Defendant had to engage in ex-

---

6. The NLRB's transmittal letter of December 30, 1970 shows that a copy of Plaintiff's NLRB charge went to the attorneys who represented Plaintiff in this lawsuit.

7. The EEOC concluded that Plaintiff may have been discharged because she was a Mexican-American. The conclusion was based on the assumption that (1) Plaintiff's misconduct warranted only a written warning, not a discharge, and (2) that because Plaintiff was discharged where a written warning was sufficient, her discharge was the result of her national origin. The problem with the EEOC's conclusion was simply that the EEOC assumed a nexus between Sierra's national origin and her discharge. As the Circuit Court pointed out, even if a lesser penalty than discharge was appropriate, that fact fails to establish any nexus between Sierra's national origin and her discharge. *EEOC v. Datapoint Corp.*, 570 F.2d 1264, 1271 (5th Cir. 1978), *see* note 11 *infra*.

The EEOC's conclusion that Plaintiff's discharge was discriminatorily induced would not, in any event, help Sierra establish that her claim was a reasonable one since all the facts in this case show that Plaintiff was not relying on the EEOC's finding.

8. At the time Sierra brought suit against Datapoint, the EEOC was following its "two letter" policy. Under the two letter policy the only way Plaintiff could receive a "right to sue" letter was to request that the EEOC issue one. Plaintiff had over one year from her settlement to consider whether or not to pursue a Title VII claim. The fact that Plaintiff asked for a "right to sue" letter and commenced suit is evidence of Plaintiff's willingness to engage in litigation.

9. In addition Plaintiff brought claims based on 42 U.S.C. § 1981, and sought injunctive relief.

tensive discovery and its attendant expense to develop a case to refute Plaintiff's allegations of across-the-board discrimination.[10]

10. Plaintiff's class action claims were disallowed when the Court denied class certification. Plaintiff went to trial on a claim that she was discharged because of her national origin. The only evidence Plaintiff offered to support that claim was her own testimony. Plaintiff's testimony at trial merely reiterated the conclusion that she had stated in her original EEOC charge filed in December, 1970. Although Plaintiff's suit had been on file for four years, Plaintiff failed to develop *any* evidence of discrimination other than the fact that she had been discharged.[11]

11. Plaintiff's claims that Datapoint discriminated against Mexican-Americans in hiring, wages, promotions and discharges were frivolous, unreasonable, and without foundation in law or in fact. Plaintiff knew at the time she had filed suit that the EEOC, because of Plaintiff's initial claim, had investigated virtually identical claims and had determined those claims to be without foundation. Nevertheless, Plaintiff brought those charges and continued to litigate them, knowing that such litigation would cause Defendant additional expense.

12. Plaintiff's claim that her discharge by Defendant was motivated by discrimination was frivolous, unreasonable, and without foundation in law or in fact. Plaintiff knew at the time she was discharged that the reason for her discharge was her own misconduct. The Texas Employment Commission, in an investigation precipitated by Plaintiff, determined that Plaintiff's discharge was caused by her own misconduct. Where Plaintiff on two prior occasions, once before the NLRB and once before the Texas Employment Commission, had claimed that she was discharged because of her union activities, Plaintiff could not have reason to believe that her discharge was in fact motivated by discrimination based on national origin.[12]

13. Plaintiff engaged in vexatious litigation by filing and conducting this lawsuit. On two prior occasions Plaintiff had claimed, before agencies charged with enforcement responsibilities, that her discharge was the result of her union activities. On each occasion Defendant was forced to expend time and money to defend its action. Plaintiff had caused Defendant additional expense in the EEOC investigation of Plaintiff's charges. Even though the EEOC's investigation revealed that the majority of Plaintiff's initial allegations were without merit, Plaintiff filed a class action re-urging claims almost identical to the ones investigated by the EEOC. Plain-

---

10. In addition, Plaintiff extended discovery into the area of testing thus increasing Defendant's expenses.

11. The fact that she was discharged was never contested by Defendant. An employer has some discretion to consider all the facts and to determine whether discharge is an appropriate remedy or whether a milder punishment would be more appropriate. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). (Fourteenth Amendment question rather than Title VII.)

12. In fact, the day prior to her discharge a Mexican-American woman had been promoted to the supervisory position on the line where Plaintiff worked. *See Balderas v. La Casita Farms, Inc.,* 500 F.2d 195, 197 n. 3 (5th Cir. 1974). In this case Plaintiff had the services of counsel experienced in Title VII claims. Plaintiff was not a *pro se* litigant who without the advice of counsel commenced suit. *See, Kendrick v. Commission of Zoological Subdistrict,* 565 F.2d 524 (8th Cir. 1977) (attorney's fees denied where *pro se* black plaintiff, discharged for serious disruptions, brought claim of racially motivated discharge, because from *pro se* plaintiff's point of view, claim not frivolous.); *Burgess v. Hampton,* 73 F.R.D. 540 (D.D.C. 1977); *Lee v. C&O Ry. Co.,* 14 FEP Cases 338 (D.Md.1975). This Court is mindful of the Supreme Court's admonition in *Christianburg* not to engage in *post hoc* reasoning. 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648, 657. The Court's caution was explained in terms that the vicissitude of trial or a change in the law could change the outcome of a lawsuit. *Id.* The Court suggested that a different standard of reasonableness might apply to the litigation efforts of a private plaintiff, however, this Court finds that because Plaintiff was represented by experienced counsel from virtually the day that she was discharged, the reasonableness of this plaintiff's litigation effort should be judged by a higher standard than the *pro se* litigant.

tiff knew that filing such an action would subject Defendant to substantial costs beyond the costs already incurred. Plaintiff failed to develop any evidence during the four years her case was in discovery.

14. Plaintiff litigated her claims in bad faith. Even though her discharge was caused by her own acts, Plaintiff engaged in a course of conduct, after her discharge, designed to harass Defendant. Plaintiff brought charges against Defendant in multiple forums. Plaintiff caused Defendant expense and inconvenience to defend and to justify its acts in each forum. In her actions before the NLRB, Plaintiff settled with Defendant what was apparently a claim related to her discharge. Approximately one year after that settlement, plaintiff willfully sought and instituted this litigation, attempting to re-litigate issues which had already been the subject of those investigations, in which Defendant had spent large sums of money, and on which Plaintiff had already received a settlement. Under these circumstances Plaintiff was not attempting to redress a legal grievance, but was using the Court as a vehicle to harass defendant.

15. For the reasons set out in the Court's prior opinion the Court finds that the sum of $3,000 is a reasonable attorney's fee. The findings of fact and conclusions of law related to that prior opinion are incorporated by reference.[13]

16. The sum of $3,000 is assessed against Plaintiff as attorney's fees to be effective from the date of the original judgment with interest on these attorney's fees to run from April 16, 1976.

## CONCLUSIONS OF LAW

1. This Court may in its discretion award attorney's fees to the prevailing Defendant in a Title VII case on a finding that Plaintiff's claim were without foundation, were brought vexatiously, were brought unreasonably, or that Plaintiff continued to litigate after they clearly became so. 42 U.S.C. § 2000e–5(k). *Christianburg*

*Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

2. The Court may assess attorney's fees against a litigant who litigates in bad faith. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1970); *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

3. The Court in its sound discretion assesses attorney's fees against Helen Sierra in the amount of $3,000.00. 42 U.S.C. § 2000e–5(k); *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714 (5th Cir. 1974).

4. Plaintiff shall pay all costs incurred in this litigation prior to April 24, 1974, as specified in the Court's judgment entered September 20, 1977, *nunc pro tunc* April 16, 1976. Execution for all attorney's fees and costs shall issue immediately.

5. All Findings of Fact may be considered Conclusions of Law, if appropriate. All Conclusions of Law may be considered Findings of Fact, if appropriate.

---

**13.** *EEOC v. Datapoint Corporation,* 412 F.Supp. 406, 408–410, Finding of Fact 15, Conclusion of Law 14 (W.D.Tex., 1976).