EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

FIRST ALABAMA BANK OF MONTGOMERY, N.A., Defendant-Appellee.

Nos. 77–1649, 77–3434.

United States Court of Appeals,
Fifth Circuit.

May 23, 1979.

---

Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, E.E.O.C., Washington, D. C., for plaintiff-appellant in No. 77–1649.

M. R. Nachman, Jr., Montgomery, Ala., for defendant-appellee in both cases.

Abner W. Sibal, E.E.O.C., Gen. Counsel, Neil A. G. McPhie, Atty., Washington, D. C., for plaintiff-appellant in both cases.

Steiner, Crum & Baker, Montgomery, Ala., for defendant-appellee in No. 77–3434.

Before MORGAN, FAY and RUBIN, Circuit Judges.

FAY, Circuit Judge:

### No. 77–1649

This proceeding was initiated in the District Court by the Equal Employment Opportunity Commission (EEOC) under § 706(i) of Title VII of the Civil Rights Act of 1964,[1] 42 U.S.C. § 2000e–5(i) (1964), to compel compliance with an earlier and unappealed order of that Court in *Henderson v. First National Bank of Montgomery*,[2] *et al.*, 360 F.Supp. 531 (M.D.Ala.1973). From the granting of defendant's motion for summary judgment, the EEOC appeals. We affirm.

### FACTS

On June 28, 1973, the United States District Court for the Middle District of Alabama entered its order in a class action lawsuit on behalf of plaintiff and all those

---

1. That section provides:

   In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

   42 U.S.C. § 2000e–5(i) (1976).

2. The bank is now known as First Alabama Bank of Montgomery.

similarly situated alleging violations of 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 by the First National Bank of Montgomery and Peoples Bank and Trust Company. Plaintiff and plaintiff-intervenors alleged that they were denied employment by defendants solely because of their race and further alleged that defendants engaged in a pattern and practice of racial discrimination in their recruiting, hiring, testing and promotion practices. The EEOC was not a party to the *Henderson* case. After a four day trial, the Court concluded that a prima facie case of racial discrimination by the bank had not been made out but that as a result of past racial discrimination by the First National Bank of Montgomery, the hiring policies had been "infected to some degree" and that same should be eradicated.[3]

Accordingly, the district court ordered the First National Bank of Montgomery to file quarterly reports with the clerk of the court "setting forth the total number of employees employed by the Bank and breaking this down as to the number of affected class members, vis-a-vis, all other employees." In addition, the reports to the court were to "set forth a general summary of the reasons why applicants were considered unemployable." 360 F.Supp. at 548. The district court retained jurisdiction in order to review the quarterly reports.

At the time the briefs of this case were written there had been thirteen quarterly reports filed by the bank. None of the parties to *Henderson*, the class members or their attorneys had complained of any violations of the order.

Notwithstanding the absence of any complaints alleging noncompliance with the *Henderson* order, on May 10, 1976, EEOC filed this proceeding under § 706(i) of the pre-1972 Title VII. The complaint alleged continuing discrimination by the bank and asked the court, in order to carry out its order to "eradicate" racial discrimination by the bank to: 1) order the bank to "make whole those persons adversely affected by its non-compliance with the *Henderson* order," 2) "modify and supplement the order in *Henderson* to the effect that (the bank) be compelled to meet certain minority hiring goals based on minority applicant percentages", 3) grant such other relief as the court deemed necessary, 4) issue a compulsory injunction against the bank requiring the eradication of racial discrimination in hiring, and 5) award costs of the action to EEOC.[4] The bank's motion to dismiss was denied and after an exchange of interrogatories, the district court, holding that the only issue before the court was compliance with its previous order, granted summary judgment for defendant bank. EEOC appeals.

■■■ Before we reach the issue of the propriety of the district court's granting of defendant's motion for summary judgment, we first focus our attention on the scope of the power vested in EEOC by section 706(i) of the Civil Rights Act. More precisely, we must first determine whether the EEOC, a non-party to a prior private civil rights suit may, under § 706(i), approach the district court in a separate civil suit seeking modification of the prior district court order.

### Section 706(i)

Our first encounter with § 706(i) was in *Braddy v. Southern Bell Telephone & Telegraph Co.*, 458 F.2d 666, (5th Cir. 1972). *Braddy* involved an appeal of a district court denial of EEOC's motion to intervene in a private class action discrimination suit.

---

**3.** Such discrimination was primarily the result of the bank's hiring from referrals by its predominately white labor force. Moreover, the bank administered certain tests to all applicants. All those applicants who scored below a certain grade were dropped from further consideration. The district court found that this test effectively screened out most black applicants and ordered that the test results could not be used as the sole employment criterion.

**4.** In *Henderson*, the district court specifically declined to order the adoption of racial quotas. In addition, the court denied plaintiff's motion for an injunction and, due to plaintiff's waiver of her claims to back pay, removed the back pay issue from consideration. 360 F.Supp. 546–48.

EEOC, denied the express authority to litigate discrimination matters under the 1964 Act, argued that § 706(i) implicitly made it a party to a private lawsuit at the moment of judgment, thus enabling it to assist the court in the fashioning of remedies. This Court, rejecting EEOC's contention, held that EEOC had no right to file its motion to intervene and therefore could not prosecute its appeal:

> We do not agree that it can be reasoned that, since Section 706(i) grants power to the EEOC to commence proceedings to enforce compliance with a court order, Congress must have intended for the EEOC to have a hand in framing that which it is empowered to sue to enforce. The syllogism goes that if they are not held to possess such ungranted power, they could be left with the Hobson's choice of not enforcing a court order or enforcing a poor one. This could be the result, but this sort of bootstrapping cannot create a legislative grant where none exists. Congress simply took the approach that this bureau was not to be the agency by which judicial relief was to be fashioned. It was not to be permitted the role of a party litigant, except to aid in compelling compliance with a decree previously entered. The wisdom, or lack of it, in such a concept cannot change the plain blueprint of this enactment. Such arguments are for solons, not judges.

458 F.2d at 668.

Appellee urges that *Braddy* requires dismissal of this appeal for lack of EEOC standing because EEOC was not and could not have been a party to the proceeding below. But appellee misreads *Braddy*. *Braddy* addressed the authority of EEOC to enter pending litigation in order to help fashion relief. Our Court held EEOC had

no such authority. While so holding, we specifically noted that we did not intend *Braddy* to delineate the parameters within which the EEOC could function under § 706(i). 458 F.2d at 669.

The Sixth Circuit has addressed the scope of EEOC's authority under § 706(i) to seek modification of a prior district court order in a private discrimination suit. In *EEOC v. United Association of Journeymen and Apprentices, Local 189,* 438 F.2d 408 (6th Cir. 1971), a divided panel of that Court upheld the district court's power and jurisdiction to enter a supplementary order in a prior private Title VII suit where the relief requested involved alteration and modification of the district court's prior order. The majority seemed to suggest that a separate proceeding was not the appropriate forum for consideration of section 706(i) actions, but termed the modification proceeding a proceeding "to compel compliance with judicial orders" and therefore properly brought under § 706(i). We do not agree that § 706(i) confers on EEOC the power to seek modification of orders of prior private discrimination suits.[5]

Under Title VII of the Civil Rights Act of 1964 as initially enacted, the EEOC had a limited role in litigating employment discrimination matters. EEOC's function was limited to investigation of employment discrimination charges and informal methods of conciliation. Civil Rights Act of 1964 § 706(a), 78 Stat. 253 (1964). If conciliation efforts failed, an aggrieved party's remedy was to initiate a private suit within 30 days after EEOC notification that conciliation had not been successful. Civil Rights Act of 1964, § 706(e), 78 Stat. 253 (1964). Thus, Congress clearly envisaged a limited role for EEOC in litigating discrimination mat-

---

**5.** We do not reach the propriety of seeking to compel compliance in a separate court action. In *United Association,* the majority noted that the proceeding was separate and therefore, not literally a compliance proceeding. Nonetheless, the court chose to "look through form to substance" and declared itself "not bound by the way the Clerk of the District Court chose to docket, style or file (the) action." 438 F.2d at

414. We agree with the soundness of this approach. The district court chose to allow this "compliance action" to proceed although filed as a separate matter from *Henderson.* The action was clearly and definitely limited as discussed. Although the district court could have dismissed the action as not "technically correct," we think either course is well within that Court's discretion.

ters.[6] *See Braddy v. Southern Bell Telephone and Telegraph Co.*, 458 F.2d 666 (5th Cir. 1972); *Air Lines Stewards and Stewardesses Association, Local 550 v. American Airlines, Inc.*, 455 F.2d 101 (7th Cir. 1972). Nevertheless, Congress did enact section 706(i), and although the legislative history on this section is scant, we can presume that Congress intended to confer some authority on EEOC when § 706(i) was enacted. Having rejected the argument that § 706(i) made EEOC a party to every private discrimination suit at the moment of judgment, and thus have a hand in the fashioning of relief ordered by the courts in such suits, we are left with the only reasonable interpretation of that section—that is, the section was meant to confer a watchdog power on the EEOC which, while depriving EEOC of the authority to fashion relief, enables EEOC to take advantage of judicial enforcement powers in order to compel compliance with court orders in private lawsuits. There is nothing in either the express language of § 706(i), its legislative history, or the statutory scheme of Title VII which suggests that § 706(i) was meant to broaden EEOC's limited role to include the power to seek modification or alteration of prior court orders. Accordingly, we hold that the district court properly limited its scope of inquiry to whether the bank has complied with the *Henderson* order.

■ With solely the issue of compliance with the *Henderson* order before the trial court, defendant's motion for summary judgment was granted. We must keep in mind that the propriety or adequacy of the *Henderson* decree is not at issue. Rather the issue is whether the bank carried out the operative provisions of the order.

The text of the order reads:

### ORDER

The Court finds that as a result of past discrimination by the First National Bank of Montgomery the present hiring policies have been infected to some degree and that the same should be eradicated. In so doing this Court is not to be understood as concluding or directing that it is required that the First National Bank of Montgomery establish quotas or ratios for to do so would be contrary to law. In an effort to eliminate the present effect of this past discrimination it is hereby ordered that this Court shall retain jurisdiction of this litigation for so long as the Court finds it necessary in order for the Court to review on a quarterly basis the present efforts of the First National Bank of Montgomery to employ qualified members of the affected class and during such period of review the First National Bank of Montgomery is to suspend the use of the employment tests now employed as a screening device for black job applicants.

Each quarter following the date of this Order the First National Bank of Montgomery will file with the Clerk of this Court a statement in writing setting forth the total number of employees employed by the Bank and breaking this down as to the number of affected class members, vis-a-vis, all other employees. This Court does not suggest or direct that it shall be necessary for the First National Bank of Montgomery to employ any person of the affected class who is not qualified by the employment of objective criteria, to hold the job for which such applicant seeks employment, but the report to the Court shall set forth a general summary of the reasons why applicants were considered unemployable.

It is further ordered that the Peoples Bank and Trust Company, not found to be so infected as the First National Bank of Montgomery, but nevertheless infected to some degree, will likewise report to

---

6. This limited role for EEOC was ended with the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103.

In the 1972 amendments to Title VII, the only change made in § 706(i) was substitution of the words "this section" for "subsection (e) of this section." Pub.L. No. 92–261, § 4(b)(2), 86 Stat. 107. There is no evidence that this amendment was intended to alter EEOC's section 706(i) powers. *See Parker v. Califano*, 182 U.S.App. D.C. 322, 329, n. 18, 561 F.2d 320, 327 n. 18 (1977).

this Court on a semi-annual basis the same information required of the First National Bank of Montgomery. It is the Court's opinion that the foregoing is necessitated by the testimony in this case that in the main the majority of the new hires by both Banks come from referrals from employees presently employed at the Banks and so long as there remains a large disparity between the affected class employees and others this imbalance is likely to continue.

The Court further orders that the plaintiffs' attorneys are entitled to recover their reasonable attorneys' fees from the defendants, the amount of such attorneys' fees to be determined by negotiation between the parties, ⅔rds of which are assessed against the First National Bank and ⅓rd against the Peoples Bank and Trust Company. In negotiating the amount of such attorneys' fees, all parties are to give due consideration to the efforts of counsel and the time involved, but tempering this by the fact that some of the activities of plaintiffs' counsel have not met with success and were injected into the litigation needlessly. In the event, within thirty days of this Order, the parties have not been able to agree upon the amount of such attorneys' fees, they are to promptly notify the Court who will cause this issue to be set for further hearing and determination by the Court.

It is further ordered that the costs in this cause be taxed against the defendants, ⅔rds against the First National Bank of Montgomery and ⅓rd against the Peoples Bank and Trust Company. Thus, the operative provisions of the Court's order required the defendant to: 1) cease using employment tests as a device for screening out black job applicants, 2) file written quarterly reports with the Court showing the total number of minority employees as compared to the total number of employees, 3) include in the quarterly reports a "general summary" of the reasons why applicants were considered unemployable and 4) pay a portion of plaintiff's attorneys' fees.

The trial court, in granting defendant's motion for summary judgment, found:

> Plaintiff's complaint does not aver, nor has plaintiff been able to demonstrate to the Court potential sources of evidence from which a factual situation could be developed that gives rise to any conclusion that defendant has violated the Henderson order.

Trial Court finding Number 10.

■ Indeed, after repeated requests for examples of noncompliance by this Court at oral argument, counsel for the EEOC was hard pressed to assert any concrete violation of the *Henderson* order. Rather, counsel argued that without statistics concerning attrition rates of both white and black employees, determination of the percentage of job openings which were ultimately filled by minority applicants is impossible. This may very well be true. But the issue under consideration is whether the bank provided the information which it was ordered to provide. The district court ruled that the bank complied. We note that while the bank did not supply any more information than it was compelled to provide, it did furnish the information as ordered by the court.

An examination of any of the quarterly reports fortifies this conclusion.[7] Page two of each report sets forth the number of minority applicants during each period, a general breakdown as to how many were hired, how many were considered employable but were not yet employed because the positions had been filled by better qualified applicants, and general reasons why certain persons were unemployable. Page three of each report listed those minority applicants who were hired and the position which they filled, and listed those minority employees who were fired or left the bank and the reasons therefor. Moreover, the third page

---

7. The report for January, 1975 through March, 1975 is included in the Appendix to this opinion.

gives the total number of officers and non-officers on the bank staff as of the close of the period, and the total number of black officers and black non-officers on the bank staff as of the close of the period.

In other words, the reports contained all that *Henderson* required. Therefore, summary judgment was appropriate.[8]

### No. 77–3434 Attorneys Fees

■ This appeal is a companion to that in No. 77–1649 and concerns the propriety of the district court's award of attorney's fees to defendant bank. EEOC appeals the award. We affirm.

In *Christiansburg v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court considered section 706(k) of Title VII of the Civil Rights Act of 1964, which provides:

> In any action or proceeding under this title the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k). In particular, the Court addressed the circumstances under which an attorney's fee should be allowed when the defendant is the prevailing party in a Title VII action. The Court concluded that a district court may, in its discretion, award attorney's fees to a prevailing defendant in a Title VII case "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 412 U.S. at 421, 98 S.Ct. at 700. Thus, the question becomes whether, in this case, the district court abused its discretion.

In its order which granted summary judgment for the bank, the district court stated:

> The plaintiff can petition to enforce the prior order issued three years ago, but not on the nebulous grounds presented where there is no evidence to sustain its theory. The raw statistics proffered are not sufficient to make a justiciable controversy where the only basis to support the plaintiff's theory is the argument of counsel.

We note that the district court's order was issued before the *Christiansburg* decision and accordingly the district court did not have the benefit of the Supreme Court's insight into the deceptively simple § 706(k). Nonetheless, we hold that the district court's characterization of this action as based on "nebulous grounds" and the court's observation that there was "no evidence" to sustain the claims of the Commission, meet the test of *Christiansburg.*

In accordance with the foregoing, these actions are affirmed.

---

8. Contrary to the assertions of appellee, § 706(i) actions are expressly subject to appellate review. 42 U.S.C. § 2000e–5(j) (1976).

## APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MAMIE R. HENDERSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3592–N |
| | ) | |
| THE FIRST NATIONAL BANK OF MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| MAMIE R. HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3593–N |
| | ) | |
| PEOPLES BANK AND TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF J. ALLEN REYNOLDS, JR. OF MARCH 31, 1975

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| MONTGOMERY COUNTY | ) |

Before me, Elaine B. Powder, a Notary Public at large for said State, personally appeared J. Allen Reynolds, Jr., who, being first duly sworn, deposes and says as follows: I am Executive Vice President of First Alabama Bank of Montgomery, N.A., formerly The First National Bank of Montgomery, a national banking association ("Bank") and as such officer I am authorized to give this affidavit.

Pursuant to the Order of this Court of July 5, 1973, the attached data is filed with the Clerk of this Court setting forth the total number of members, vis-a-vis, all other employees, and setting forth a general summary of the reasons of why applicants of the affected class were considered unemployable.

(s) _J. Allen Reynolds, Jr._
J. ALLEN REYNOLDS, JR.

Sworn to and subscribed
before me on this 31st
day of March, 1975.

_____
Notary Public

FIRST ALAMABA BANK OF MONTGOMERY
Report Period: January 1–March 31
Applicants—73

| | |
|---|---|
| HIRED | 5 |
| HIRED, BUT LATER REFUSED JOB | 1 |
| IN ACTIVE FILE * | 21 |
| FAILED TO RETURN FOR SCHEDULED INTERVIEW | 8 |
| NO PRESENT CLERICAL OPENINGS | 6 |
| FAILED TO KEEP APPOINTMENT FOR SCHEDULED APTITUDE TEST | 5 |
| SEEKING SUMMER EMPLOYMENT | 4 |
| NO PRESENT LUNCHROOM OPENINGS | 3 |
| NO PRESENT DATA PROCESSING OPENINGS | 2 |
| NO PRESENT ACCOUNTING OPENINGS | 2 |
| NO PRESENT TYPING OPENINGS | 2 |
| POOR CREDIT REFERENCE | 2 |
| NO PRESENT PURCHASING OPENINGS | 2 |
| NO PRESENT MANAGEMENT TRAINEE OPENINGS | 2 |
| POOR EXPRESSION OF IDEAS; LACK OF COMMUNICATION | 2 |
| NO AVAILABLE PART TIME WORK | 1 |
| PERMANENCY RISK | 1 |
| NO PRESENT SECRETARIAL OPENINGS | 1 |
| NO PRESENT MARKETING OPENINGS | 1 |
| ANSWERING ADVERTISEMENT FOR ANOTHER BANK | 1 |
| SHOWED LATE FOR SCHEDULED APTITUDE TEST, REFUSED TO RE-SCHEDULE | 1 |
| TOTAL | 73 |

* These persons were not considered unemployable but have not been employed to date because other applicants for the particular job openings which occurred during this quarter were considered to be better qualified for the positions involved.

FIRST ALABAMA BANK OF MONTGOMERY
Report Period: January 1–March 31

ADDITIONS:

| | | |
|---|---|---|
| Dan Williams | 1/13/75 | Purchasing |
| Horace Nettles, III | 1/13/75 | Mail Room |
| Deborah Dunn | 1/20/75 | P/T Western |
| Rosalyn G. Graves | 1/27/75 | Data Processing |
| Marcia Jones | 2/ 3/75 | Central Files |
| Janie Howard | 3/17/75 | Lunchroom (Temp) |
| Rebecca Armstrong | 3/17/75 | Lunchroom (Temp) |

REMOVALS:

| | | |
|---|---|---|
| Herman Watkins | 1/ 3/75 | Released: Inefficiency, failure to report for scheduled duty, disappearance from work station. |
| Marcia Jones | 1/15/75 | Approved Maternity Leave |
| Amy Reese | 3/28/75 | Approved Maternity Leave |
| Mary Christian | 3/13/75 | Left w/o notice |
| Charles Lawson | 3/28/75 | Another job, more money |

| | | | |
|---|---|---|---|
| NON–OFFICER TOTAL ON 3/31/75 | 499 | Black | 74 |
| OFFICER TOTAL ON 3/31/75 | 103 | Black | 2 |
| TOTAL STAFF | 602 | | 76 |

ALVIN B. RUBIN, Circuit Judge, dissenting in part:

Although I concur in the majority views with respect to No. 77–1649, I must respectfully dissent from its decision in No. 77–3434 to affirm the award of attorneys' fees to the defendant bank.

The trial court awarded attorneys' fees to the defendant as the "prevailing party" under § 706(k) of Title VII, stating that "in making such determination the Court is not to consider whether the prevailing party is the plaintiff or the defendant in the action giving rise to the request for attorney's fees. *United States v. Allegheny-Ludlum Industries, Inc.,* 558 F.2d 742 (5th Cir. 1977)."

The Supreme Court has since held that a prevailing defendant may recover from an unsuccessful plaintiff only if the claim was "frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC,* 1978, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648, 657. The Fifth Circuit, therefore, withdrew that part of *Allegheny-Ludlum* on which the trial court relied in making its award, *see United States v. Allegheny-Ludlum Industries, Inc.,* 5 Cir., 1978, 568 F.2d 1073, 1074.

The language the majority quotes to support its assertion that this suit would have been found by the district court to have been "frivolous, unreasonable, or groundless" is taken from the body of the order granting summary judgment, not from the court's detailed findings of fact and conclusions of law dealing specifically with the motion for attorneys' fees. Nowhere in those findings or conclusions is there any intimation that the trial court considered this action totally baseless, or any articulated facts that would justify the majority's efforts to read the mind of the trial court. Because that court has not had the opportunity to consider the question under the *Christiansburg* standards, I would vacate the award and remand for reconsideration in light of the intervening Supreme Court case.