**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-20476
Summary Calender

_____

ROBERT E MARTEL,

Plaintiff-Appellant,

v.

MAXXAM INC; MAXXAM GROUP,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-1164)

_____

March 23, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and JONES, Circuit Judges.

PER CURIAM:*

## I.  BACKGROUND

The issue raised in this appeal is whether the trial judge abused his discretion in ordering

Robert E. Martel (Martel) to pay Defendant-Appellees' attorney's fees on the basis that Martel's

False Claims Act suit was frivolous.  Finding no abuse of discretion, we affirm.

In January of 1995, Martel brought a suit under the False Claims Act (FCA) , 31 U.S.C. §

3730, against Maxxam; the Chairman of Maxxam, Charles E. Hurwitz; and against other parties.

Martel alleged that the Defendants defrauded the federal government (the government) in

connection with the 1988 failure of a Texas thrift, United Savings Association of Texas (USAT).

In essence, Martel alleged that the defendant defrauded the government when they secretly

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

controlled USAT, and that if this control had been disclosed, the government would have required the defendants, rather than the government, to incur the cost of "bailing out" USAT.

The trial court dismissed the case in its entirety. Maxxam then moved to recover the attorney's fees it incurred. The trial court granted the motion, and awarded $110,122.65 for attorneys fees and expenses under the FCA and under its inherent power to sanction. The trial court found, in relevant part, that the suit was frivolous because Martel knew that his suit was based on publically disclosed information, and that he was not the original source of that information, whereas the FCA bars suits based on publically disclosed information unless brought by the original source of that information. Therefore, the trial court concluded that Martel knew that there was no federal jurisdiction for this suit. Martel now appeals the attorney's fees award.

## II. DISCUSSION

The qui tam provisions of the FCA allow individuals to sue on behalf of the government to recover federal monies lost as a result of false claims and fraudulent charges. 31 U.S.C. § 3730. The FCA places jurisdictional limits on who may bring qui tam actions. It bars all qui tam suits which are based upon publically disclosed allegations or transactions unless the person bringing the action is an original source of the information. 31 U.S.C. § 3730(e)(4)(A).[**] The FCA provides for the award of attorney's fees where the claim was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4).

This court has not previously addressed the standard of review for an attorney's fee award under Section 3730(d)(4) of the FCA. Today we apply the abuse of discretion standard to such awards. Notably, other circuits have reviewed an FCA attorney's fee award under an abuse of discretion standard. *See United States Ex. Rel Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1548 (10th Cir. 1996). Under the abuse of discretion standard, a trial court's decision will not be

---

[**] This section states that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney general or the person bringing the action is the original source of the information."

disturbed unless the appellate court "has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* at 1548-49. This standard of review is consistent with our cases involving the award of attorney's fees in analogous circumstances. *See Travelers Ins. Co. v. St. Jude Hosp., Inc,* 38 F.3d 1414, 1417 (5th Cir. 1994) (applying abuse of discretion standard to award of attorney's fees under 28 U.S.C. § 1927, which provides attorney fees when a case is unreasonable and vexatious); *EEOC v. First Ala. Bank*, 595 F.2d 1050, 1056 (5th Cir. 1979) (applying abuse of discretion standard to award of attorney's fees under Title VII, which provides for an award when the plaintiff's action was frivolous, unreasonable or without foundation).

In this case, the district court determined that Martel knew that his suit was based in publically disclosed information of which he was not the original source, and thus that his suit was frivolous and the award of attorney's fees against Martel was justified. After comparing the publically disclosed information to the allegations in Martel's complaint, we find no abuse of discretion.

The essence of Martel's qui tam claim was the allegation that the Defendants misrepresented the amount of control that they had over USAT, that in so doing the Defendants avoided the obligation to keep the thrift adequately capitalized, and that such misrepresentation and failure to adequately capitalize resulted in a loss of government funds when the government had to "bail out" the failed thrift. Prior to Martel's suit, an article published in the American Banker on December 17, 1991 stated:

> [t]he Federal Deposit Insurance Corp. was looking at Maxxam and its Chairman, Charles E. Hurwitz, in connection the failure of United Savings Association of Texas . . . . Maxxam, based in Houston, was a minority shareholder, and Mr. Hurwitz, chairman of the holding company of United Savings, which was seized by regulators in 1988. Moreover, a $12 billion FDIC lawsuit filed in January against junk bond dealer Michael Milken alleges a scheme in which United bought $1.4 billion of junk bonds underwritten by Drexel Burnham Lambert . . . . Mr. Hurwitz, through a spokesman, said he neither owned nor controlled the thrift and that he did not take part in the decisions to buy the junk bonds. But the FDIC suit, while it does not list Mr. Hurwitz as a defendant, claims he and the Milken group, in effect, controlled United by pooling minority stakes. A regulatory Filing in 1989 by the holding company, United Financial Group, Inc., acknowledged that it

expected the FDIC to make a claim of $534 million on connection with a net
worth agreement signed when the company acquired a troubled thrift in 1983.

Additionally, an article published in the New Jersey Law Journal on April 18, 1991, reiterates that

the government was already investigating Hurwitz and his companies regarding the allegation of

money owed the government due to a failure to keep USAT adequately capitalized.[***]  Finally, a

letter by Martel's counsel, dated in September, 1994, some months before Martel's FCA suit,

states that Hurwitz controlled USAT through control of a large block of voting stock in the

holding company that was the S&L's sole owner.  That same letter states that most of the facts

and conclusions contained therein were already known to the government through its

investigations of Hurwitz and his companies.

On the basis of these articles, it would not be unreasonable to conclude that Martel knew

that the essential facts, allegations and transactions underlying his suit had been publically

disclosed.  These articles either explicitly state, or provide information from which a person could

easily infer that Hurwitz misrepresented the amount of control that he had over the Thrift, and

that the FDIC was seeking compensation regarding the failure to keep the Thrift adequately

capitalized.  In order to justify the district court's conclusions, the record need not show that the

publically disclosed information mirrored the allegations in Martel's FCA complaint in every

detail.  Under prevailing law, Martel should have known that an FCA qui tam action is barred

even where it is partly based upon publically disclosed allegations or transactions.  *United States*

*ex rel. Federal Recovery Services., Inc. v. United States,* 72 F.3d 447, 450 (5th Cir. 1995)

(stating that a False Claim Act case is barred even when it is partly based on publically disclosed

allegations or transactions); *United States ex rel Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d

---

[***] That article states: "This company, United Financial Group, owned United States Savings Association of Texas, a big S&L that failed in 1988.  Although Hurwitz technically did not control United Financial or its S&L, he was chairman of United Financial until 10 months before the S&L failed.  He remains United Financial's biggest shareholder.  Which means he had more than a little to say about how the place was run.  The FDIC wants United Financial to fork over some dough because, it says, United Financial agreed to keep the now defunct United Savings Association of Texas adequately capitalized.  United Financial denies that.  United Savings was closed on Dec. 30, 1998."

645, 652 (D.C. Cir. 1994) (explaining that a fraudulent transaction is publically disclosed where the conclusion that fraud has been committed can be reasonably inferred from the facts disclosed). The district court could reasonably conclude that the information relied on in Martel's complaint is best characterized as a continuation of, or as derived from, prior newspaper articles and investigations. Moreover, Martel's bare allegations that a secret witness gave him original information are not enough to overturn the fee award. Thus, the record supports the district court's conclusion that Martel knew that his suit was based on publically disclosed information of which he was not the original source and that Martel's suit was therefore frivolous. Thus, the district court did not abuse its discretion in ordering Martel to pay Defendants' attorney's fees.

AFFIRMED.