**Kathryn C. JONES, Plaintiff,**

v.

**Max CLELAND, as Administrator of Veterans Affairs, Veterans Administration, United States of America, Defendant.**

Civ. A. No. CA 77–G–1206–W.

United States District Court, N. D. Alabama, W. D.

Feb. 27, 1981.

Alvin T. Prestwood, Montgomery, Ala., for plaintiff.

Caryl P. Privett, Asst. U. S. Atty., Birmingham, Ala., for defendant.

## ORDER ENFORCING FINAL JUDGMENT

GUIN, District Judge.

The Plaintiff's motion to enforce the final judgment of this Court dated September 27, 1978 is hereby GRANTED, and, in conformity with and pursuant to the Memorandum Opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED as follows:

1. The Defendant shall "red-circle" the Plaintiff and promote her to the next position of Chief of Voluntary Services which comes open after the Plaintiff's completion of six months of service and training as Voluntary Services Officer Trainee at Veterans Administration Hospital, Tuscaloosa, Alabama; provided, however, that such "red-circling" shall terminate if and when the Plaintiff is offered such a position and declines to accept it;

2. The Defendant shall pay the Plaintiff back pay at the GS–7 personnel grade with full benefits therein to which she would have been entitled, including normal increases in pay, had she served as Voluntary Services Officer Trainee from October 7, 1976 to January 12, 1978;

3. The Defendant shall pay the Plaintiff back pay at the GS–9 personnel grade with full benefits therein to which she would have been entitled, including normal increases in pay, had she been given the job of Chief of Voluntary Services on January 13, 1978 at the personnel grade and pay level of GS–9/1, such pay and benefits to be computed to the day she is actually placed in the position of Chief of Voluntary Services, or is offered such a position and declines to accept it;

4. Because of the long delay already occasioned by the stays and appeal in this cause, this Court is apprehensive that another such appeal might further delay the payment by the Defendant of the Plaintiff's back pay, none of which had been paid at the time of the evidentiary hearing on February 3, 1981; therefore, if for any reason

the Defendant is not immediately required to pay to the Plaintiff the back pay to which she is entitled under this order, the Defendant shall forthwith pay to the Plaintiff the amount of back pay which the Defendant has heretofore computed to be due the Plaintiff, without a waiver of any of the Plaintiff's rights to further back pay in compliance with the terms of this order.

5. All other matters relating to this cause, including the issue of the award of attorney's fees and expenses to the Plaintiff, are reserved.

Costs are taxed against the Defendant.

## MEMORANDUM OPINION

█ This cause is before the Court upon a motion by the Plaintiff to enforce the judgment of this Court dated September 17, 1978 and filed in the Office of the Clerk on September 28, 1978 (466 F.Supp. 34).[1]

The "Order of Final Judgment" found that the Plaintiff had been discriminated against in federal employment because of her sex (under 42 U.S.C. § 2000e et seq.) and, alternatively, because of her age (under 29 U.S.C. § 621 et seq.), and provided, in pertinent part, as follows:

"First, plaintiff shall be given the promotion for which she had applied, to the position of Volunteer [Voluntary] Services Officer Trainee, or, if this position is not now open, she shall be 'red-circled' and given the next comparable position which comes open;

"Second, plaintiff shall be given back pay with interest and full benefits befit-

ting the job which she was denied from the date of the denial, October 7, 1976, to the date she is given this or another comparable promotion...."

The Defendant appealed this Court's decision to the United States Court of Appeals for the Fifth Circuit, and that Court affirmed the judgment of this Court. See *Jones v. Cleland*, 619 F.2d 82 (5th Cir. 1980). After the appeal process was completed, the Defendant notified Plaintiff's counsel that the Plaintiff would be placed in the position of Voluntary Services Officer Trainee effective July 27, 1980,[2] and that her back pay would be computed in that position in the GS–7 grade level from October 7, 1976 to July 26, 1980, and that her time-in-grade would be computed from October 7, 1976.

The Plaintiff contends that "full benefits befitting the job which she was denied" include more than just back pay in the training position itself, but also a promotion to Chief of Voluntary Services, and that the letter and spirit of this Court's order required the Defendant to provide her back pay benefits from October 7, 1976, at the GS–7 level in the position of Voluntary Services Officer Trainee, to the time when that training program would have been completed. From that time, the Plaintiff contends that she should have been given back pay benefits as Chief of Voluntary Services.

This Court set an evidentiary hearing on February 3, 1981, specifically to determine whether a promotion to the position of

1. Such motion is the proper method to seek this Court's assistance in interpreting its judgment. *See U. S. v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980); *U. S. v. Detroit*, 476 F.Supp. 512 (E.D. Mich.1979); *U. S. v. Washington*, 459 F.Supp. 1020 (D.C.Wash.1978); *Baker v. Gotz*, 408 F.Supp. 238 (D.C.Del.1976); *U. S. v. Hennen*, 300 F.Supp. 256 (D.C.Nev.1968); *Mississippi Valley Barge Line Co. v. U. S.*, 273 F.Supp. 1 (E.D.Mo.1967), *affirmed, Osbourne v. Mississippi Valley Barge Line Co.*, 389 U.S. 579, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968), *reh. den.*, 390 U.S. 975, 88 S.Ct. 1024, 19 L.Ed.2d 1193 (1968).

2. The United States Court of Appeals for the Fifth Circuit had stayed this Court's order

pending appeal after this Court had denied a motion for such stay. The granting of this stay has substantially complicated this matter, not only in confusing the computation of the Plaintiff's "rightful place" economically (see *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763–764, 96 S.Ct. 1251, 1263, 1264, 47 L.Ed.2d 444, 461 [1976]), but also in delaying the Plaintiff's training which would have allowed her to actually assume the ultimate position for which she was to be trained. At the time of the evidentiary hearing in this cause, the Plaintiff had successfully and satisfactorily completed five months of the required six-month training period to qualify her to be promoted to Chief of Voluntary Services.

Chief of Voluntary Services was in fact a "benefit befitting the job which [the Plaintiff] was denied."

The undisputed evidence shows that 15 persons were serving in the position of Voluntary Services Officer Trainee on October 7, 1976, and that 42 persons were appointed to that training position between October 7, 1976 and the time of the evidentiary hearing. Of the total of 57 persons thus serving in that training position nationwide since October 7, 1976, 12 are still in training.[3] Of the 45 persons who are no longer in the program one "left" or "dropped out" of the training program.[4]

The Court finds from the undisputed evidence that 44 training participants have completed their training since October 7, 1976 and that 41 of that group were promoted directly to the position of Chief of Voluntary Services within eleven months from the commencement of their training.[5] The remaining three training participants who completed the program ultimately were all promoted to Chief of Voluntary Services, but, for various reasons, they all passed temporarily through the position of Assistant Chief of Voluntary Services. However, they all ultimately made their way to the full Chief positions in eleven, twenty-two, and twenty-seven months, respectively, from the date they began their training.

Since all 44 of the trainees who completed their training were promoted to the position of Chief of Voluntary Services, this Court can only conclude that such promotion was in fact a "benefit befitting the job" of Voluntary Services Officer Trainee.[6] While nothing is absolutely certain, the promotion has been shown to be as automatically and certainly the result of entering the training program as any judicial inquiry can possibly require.

The question of when Ms. Jones would have received her promotion had she actually entered her training on October 7, 1976 is, of course, less certain. However, it is established that the availability of position vacancies has frequently occurred since that time. The Defendant's own evidence at the trial established that the Veterans Administration itself considered Ms. Jones and Mr. William B. Vindiola to be very closely matched applicants for the training position based upon their prior performance, experience, and training. Mr. Vindiola was the younger male who was appointed to the position in lieu of Ms. Jones. Since this Court has judicially determined that Ms. Jones was in fact more qualified than Mr. Vindiola at the time she was passed over for the trainee position, the Court cannot in good conscience assume that she would have progressed to promotion any slower than he did. That promotion of Mr. Vindiola came fifteen months and six days after he entered the program. The Court therefore finds that Ms. Jones should have been promoted to Chief of Voluntary Services no later than January 13, 1978, which was exactly fifteen months and six days

---

3. Of these 12, 3 are serving in twelve-month training programs and have been at the training level for longer than six months. The remaining 9 (including the Plaintiff) are serving in six-month training programs and have been in the position for less than six months.

4. The Court concludes from this language that the employee who "left" or "dropped out" of the program did so voluntarily due to disinterest in continuing to train or perhaps for other personal reasons.

5. Thirteen were promoted after only six months of training, and 28 were promoted after seven to eleven months of training. The evidence is somewhat confusing on this point, because Mr. William B. Vindiola, the younger male, who was appointed in lieu of the Plaintiff, was appointed directly from the training position to Chief of Voluntary Services after

serving in the trainee position for a total of fifteen months and six days. The Court assumes that he may have been omitted from the statistical analysis of the promotions which was supplied by the Defendant.

6. The fact that one participant "left" or "dropped out" of the training program does not detract from this finding. Ms. Jones has actively sought the training position through the administrative and judicial processes for over four years, and had, at the time of the evidentiary hearing, successfully and satisfactorily completed five of the required six months of training. This evidence does not even come close to suggesting that she would have "left" or "dropped out" of the training program if she had been allowed to enter it on October 7, 1976.

after she was denied entry into the training position.

The question of the personnel level and pay grade to which Ms. Jones would have been entitled is also not a matter of precise determination. The evidence reveals that the position of Chief of Voluntary Services carries a personnel grade rating of anywhere from GS–8 to GS–11. Mr. Vindiola's promotion was to the grade of GS–9, and this Court can do no less than find that Ms. Jones would have received a promotion to that grade also. However, due primarily to her longevity, the Defendant has admitted that her initial appointment to the training position would have been two pay-steps higher than his.[7] Since his promotion to Chief of Voluntary Services was at the level of GS–9/1, the Court finds that Ms. Jones should have been given the level of GS–9/1 on or before January 13, 1978.

All other matters pending in this cause are expressly reserved by the Court, including the issue of an additional award of attorney fees to the Plaintiff's attorney.

A separate order in conformity herewith is being entered contemporaneously.

---

7. Mr. Vindiola was appointed to the GS–7/1 pay level when he was initially placed in the position of Voluntary Services Officer Trainee. The Defendant has admitted that Ms. Jones would have been placed in that position at the GS–7/3.