**EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,**

v.

**SHONEY'S, INC., Defendant.**

Civ. A. No. 81–G–0509–S.

United States District Court,
N. D. Alabama, S. D.

May 28, 1982.

See also, D.C., 536 F.Supp. 875.

Leroy D. Clark, Gen. Counsel, James N. Finney, Associate Gen. Counsel, E. E. O. C., Washington, D. C., Jerome C. Rose, Regional Atty., W. L. Williams, Jr., Supervisory Trial Atty., Synthia R. Glover, Trial Atty., E. E. O. C., Birmingham, Ala., for plaintiff.

Charles A. Powell, III and Lewis W. Page, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant.

GUIN, District Judge.

## MEMORANDUM OPINION

This court previously entered summary judgment in favor of the defendant, Shoney's, Inc., and against the Equal Employment Opportunity Commission (EEOC) on January 27, 1982, on the ground that the EEOC could not establish the first element of a *prima facie* case, and for other alternative reasons. On March 23, 1982, this court entered its order awarding attorneys' fees in the amount of $17,257.93 to the law firm of Lange, Simpson, Robinson & Somerville and $1,444.96 to the law firm of Trabue, Sturdivant & DeWitt for their representation of the defendant in this litigation. On April 7, 1982, the court granted the defendant's motion to alter or amend and amended its order to provide that the plaintiff pay the $18,702.89 in attorneys' fees directly to the defendant. Also on April 7, the court entered a supplemental memorandum opinion stating additional findings concerning the reasonableness of the award.

This case now comes before the court on plaintiff's motion to alter or amend the order of April 7.[1] In support of its motion, the plaintiff contends that it had not previously challenged the reasonableness of the requested fees because "in the Commission's judgment the question of reasonableness was not properly before the Court until after the Court had made a specific award

of attorney fees in the first instance." Memorandum of Points of Law and Authorities in Support of Plaintiff's Motion to Alter or Amend the Court's Order of April 7, at 2. The court finds no merit in the Commission's argument that it had the right to assume that there would be a two-step inquiry into the matter of attorneys' fees. Such is not the practice of this court unless such is specified by a particular order of the court. The plaintiff's duty was to respond to the defendant's petition for attorneys' fees. That petition set forth not only the reasons why it was entitled to an award of fees but also contained a detailed listing of the hours spent and fees claimed. The EEOC ignored the defendant's argument supporting the reasonableness of the fees sought and instead merely challenged the propriety of any award in the brief it submitted in opposition to the petition. The petition for attorneys' fees was heard on the court's regularly scheduled motion docket on March 12, 1982, at which time neither side offered further oral argument.[2] Although the court finds that the Commission was not precluded from challenging the reasonableness of the award and was not denied a hearing, the court granted the EEOC a hearing on its motion to alter or amend to allow it to make any arguments it desired.

After considering the arguments presented by the plaintiff orally and in brief, and the defendant's response, the court has determined that both its orders and opinions of March 23 and April 7 should be modified. Instead of having three separate orders and opinions on this one issue of attorneys' fees, the court will order the two prior orders and opinions withdrawn and this opinion and accompanying order substituted therefor.

The defendant, being uncertain of the procedure in this district for requesting at-

1. Although there may be some question as to whether the plaintiff's motion is timely under Rule 59(e), Fed.R.Civ.P., the court finds that the motion is at least timely under Rule 60(b).

2. At the March 12th hearing, the only thing offered by the Commission was a motion for

relief from summary judgment, which the court denied on March 23, 1982. The EEOC now contends that it was denied a hearing on the reasonableness of the attorneys' fee award, although it did not avail itself of the opportunity offered by the March 12th motion docket.

torneys' fees, brought its request before the court in a petition to retax costs to recover attorneys' fees and also in a separate petition for allowance of attorneys' fees.[3] The bill of costs and petition for attorneys' fees were filed within ten days of the entry of the judgment because of the possibility that controlling Fifth Circuit precedent, *Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980), and *Jones v. Dealers Tractor and Equipment Co.*, 634 F.2d 180 (5th Cir. 1981), might be overruled in *White v. New Hampshire Department of Employment Service*, —— U.S. ——, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), which was then under submission.[4] *White* holds, however, that a petition for attorney's fees is not governed by the ten-day time limit contained in Rule 59(e) of the Federal Rules of Civil Procedure. As Justice Blackmon's dissent points out, it is not clear whether Rules 54(d) and 58, or no rule govern such requests.

■ The court finds that the preferable procedure is for the court to decide the defendant's petition for attorneys' fees rather than the petition to retax costs. Since the clerk of the court has no power to award an attorney's fee, it would be illogical to "retax" that which could not have been taxed originally. Further, the Supreme Court has indicated in 1939 that the request for attorney's fees is a collateral and independent proceeding. *Sprague v. Ticonic National Bank*, 307 U.S. 161, 170, 59 S.Ct. 777, 781, 83 L.Ed. 1184, 1189 (1939).

The petition for attorneys' fees is made pursuant to the provision of 42 U.S.C. § 2000e–5(k), which provides:

(k) Attorney's fee. In any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

The EEOC contends in support of its motion to alter or amend that awards against it should be carefully scrutinized because the EEOC is Congress' "chosen instrumentality" to enforce the law. Congress undoubtedly foresaw that its "chosen instrument" would not be above misbehavior when it specifically provided that "the Commission ... shall be liable for costs the same as a private person." Since the statute provides that attorney's fees could be awarded as part of the costs, the Commission should, therefore, be liable for attorney's fees "... the same as a private person."

The Supreme Court clearly enunciated the standard to be applied in deciding whether to award attorney's fees to a prevailing defendant in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Attorney's fees may be awarded a prevailing defendant in a Title VII case when the court finds that the plaintiff's claim was "frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." 434 U.S. at 422, 98 S.Ct. at 701, 54 L.Ed.2d at 657 (emphasis in original).

This court, in its summary judgment memorandum opinion, determined in effect that the EEOC claim was groundless. Since the EEOC is bound by the testimony of its charging party, and the deposition of Charles Firth in no way supported the contentions of the EEOC as set out in the answers to interrogatories and pretrial order, the EEOC would be unable to establish even the first element of a *prima facie* case. *See* Memorandum Opinion of January 27, 1982, at 4–5, and the excerpts from Firth's deposition attached as Addendum A to the

---

**3.** At the time this matter arose, this district had no local rule governing the procedure of requesting attorney's fees. The judges of this district are presently considering such a rule.

**4.** This cautious and thoughtful filing of the two petitions within ten days of the entry of judgment is one example of the prudent manner in which defense counsel handled this case.

opinion.[5] The EEOC should have been aware that the claim was groundless when it filed suit. In any event, after taking the depositions of Firth and others any reasonably intelligent person should have realized that the EEOC claim was unreasonable and groundless. Yet the EEOC continued to prosecute the suit, even though given the repeated opportunity to settle. It is the ethical duty of every attorney to dismiss a claim when it becomes evident that it is without merit. Attorneys for the government should be bound by an even higher ethical standard. Having both begun and continued this litigation when it was clear that the claim was unreasonable or groundless, the EEOC subjected itself to liability for payment of defendant's attorneys' fees.

█ While it is not necessary for the award of attorney's fees under 42 U.S.C. § 2000e–5(k) to find that the plaintiff acted in bad faith, see *Christiansburg,* 434 U.S. at 419, 98 S.Ct. at 699, 54 L.Ed.2d at 655, the actions of the EEOC so blatantly demonstrate bad faith that they cannot be overlooked. The court is well aware of the incidents listed by the defendant in its petition as evidence of the plaintiff's bad faith. The court noted in its summary judgment opinion the twisting of facts stated by Firth on the "intake questionnaire" into a different claim on the EEOC "charge." *See* Memorandum Opinion at 4, n.4. Not only did the Commission twist the facts, it tried to conceal that twisting by embarking on a course to suppress the intake document. When the EEOC produced a copy of Firth's file, it contained no statements by Firth or Pollock. At the hearing on defendant's motion to compel, the plaintiff denied that it had any statements from Firth or Pollock in Firth's file, but conceded that there could possibly be some statements in Pollock's

file. *See* Order of August 20, 1981. Firth's intake questionnaire was finally produced and the EEOC's attempt to manufacture a Title VII charge revealed.

Further evidence of EEOC's bad faith conduct is found in its pursuit of discovery of "comparative data." The EEOC represented to the court that the massive discovery was necessary to show the past policies and enforcement of policies by Shoney's, in order to show the discriminatory motive in the discharge of Firth. Shoney's objected to the requested discovery but was ordered to provide the requested information. When the EEOC filed its "Statements of Facts to Be Proved at Trial," there was no offer to prove any "comparative data" although the EEOC had claimed that it was "essential" to support the claim of retaliatory motive. The preparation of the requested materials and documents consumed much time by defense counsel. It now is clear that the EEOC had no need for the documents whatsoever. It is only just that it should have to pay for the time spent by defense counsel in such an unwarranted exercise.

The plaintiff contends that the defendant's attorneys engaged in "misconduct" by refusing to provide specific discovery until ordered to do so, and that it should not be liable for any fees generated by defendant's "willful resistance to a relevant, reasonable discovery request." Memorandum of Points of Law and Authorities in Support of Plaintiff's Motion to Alter or Amend the Court's Order of April 7, 1982, at 15. In light of the numerous hours required to provide the plaintiff with the massive discovery sought, and the fact that such "essential" and "relevant" information did not become part of its "Statements of Facts to Be Proved at

5. The EEOC, in its response submitted the day of the hearing, contends that portions of Firth's deposition could be read to find that Firth protested the discharge of Christi Pollock as being based on sex discrimination. The court reviewed Firth's deposition as well as Pollock's deposition before entering its summary judgment in favor of Shoney's. The court has reviewed both depositions again and reiterates its conclusion that the only "discrimination" about which Firth possibly complained was preferential treatment given a manager as opposed to an hourly employee. Such "discrimination" is not prohibited by Title VII or any other law. *See* Opinion at 3–5. As seen on pages 64–65 and 72 of the Firth deposition, counsel for EEOC could not even lead Firth into stating that he protested to Shoney's that Pollock was discharged because of her sex.

Trial," the court finds in retrospect that the defendant was justified in objecting to that requested discovery. The court sees no reason why the defendant should not recover the fees and expenses incurred regarding this discovery pursued by the EEOC in apparent bad faith.

The inconsistent positions taken by the EEOC regarding the relevancy of the Pollock discharge provide further evidence of bad faith. In the pretrial order drafted by the EEOC and entered by the court on October 27, 1981, the plaintiff's position referred to the discharge of Christi Pollock in detail. On December 9, 1981, in response to Shoney's interrogatories, the EEOC reversed its position and objected to all the interrogatories concerning Pollock, asserting that the discharge of Pollock was not at issue and was irrelevant to the present case. In its "Statements of Facts to Be Proved at Trial" filed January 24, 1982, the EEOC listed six facts which dealt directly with the Pollock discharge—again reversing its position as to the relevance of the Pollock matter. These totally contradictory positions taken by the EEOC greatly disturb the court. There is no rational explanation for these opposed positions other than a motive to hinder Shoney's in the preparation of its case and to abuse judicial process. These actions clearly demonstrate bad faith by the EEOC.

The plaintiff now contends that the defendant took Pollock's deposition in anticipation of the lawsuit she eventually filed and, therefore, the defendant should not recover fees or expenses incurred in the taking of the deposition. The plaintiff also asserts that the deposition could only have been taken in anticipation of Pollock's case since the defendant had already determined that the Commission's case was groundless when it scheduled the deposition. The court finds such an argument to be ludicrous, particularly in view of the numerous changes in position EEOC made regarding the relevancy of Pollock's discharge. Further, a good attorney does not terminate the preparation of a case merely because he determines that it appears meritless to him. Shoney's should not be penalized for hiring competent and diligent counsel who vigorously protected its interest.

There are other incidents which created what the defendant refers to as a "nagging stream of small problems" and which further show the intolerable manner in which the EEOC conducted itself. First, the EEOC deleted from Firth's file as "investigative notes" material in many other categories which should have been readily produced. Second, the EEOC constantly missed court-ordered deadlines, much to the exasperation of the court and to the inconvenience of the defendant who frequently was left with only one day to prepare material for the court as a result of the plaintiff's uncalled for delay. Third, the EEOC clearly evaded Shoney's interrogatories regarding expert witnesses, trial witnesses and exhibits, and the contended legality of Shoney's fraternization policies. Fourth, the EEOC intercepted before filing the court's copy of the Walker, Rooker, and Willingham depositions in blatant violation of Fed.R.Civ.P. 30(f).[6] These nagging little problems combine to further show a course of conduct which cannot be tolerated, particularly from a government agency charged with protecting civil rights.

In its defense, the EEOC submitted affidavits and arguments which are no more than a smoke screen and deserve little attention. One of the contentions asserted is that this case was reviewed at nine different supervisory levels before suit was filed and therefore "it is inconceivable that the case can be considered frivolous or without merit." Plaintiff's Memorandum in Opposition to Defendant's Petition for Allowance of Attorney's Fees, at 6. Under such logic, the EEOC could never engage in frivolous

6. This required the court to work from copies supplied by the defendant while drafting the summary judgment opinion. Several telephone calls were made by the court's clerk to the EEOC before the depositions were finally filed.

The court sincerely hopes that this was not done as an attempt to conceal evidence from the court. In light of other questionable conduct of the EEOC, however, the court is more than a bit skeptical of the EEOC's motives.

or meritless litigation. Numerous courts have, however, found that the EEOC did engage in frivolous or meritless litigation and have awarded attorney's fees to the prevailing defendant. *E.g., EEOC v. First Alabama Bank of Montgomery, N.A.*, 595 F.2d 1050 (5th Cir. 1979); *EEOC v. Datapoint Corp.*, 457 F.Supp. 62 (W.D.Tex.1978); *EEOC v. Bendix Corp.*, 435 F.Supp. 76 (M.D.Fla.1977). The fact that such a meritless case as this survived nine levels of bureaucratic review supports this court's conclusion that the bureaucracy needs some incentive to do a better job in its review.

The court, having reviewed all the evidence and based upon the facts of this matter, finds that the EEOC conducted itself in bad faith from the initial acceptance of Firth's charge and the filing of this suit, and continued the prosecution of this case in bad faith. The bad faith of the EEOC permeates the prosecution of this case from the beginning. As previously noted, the EEOC twisted the initial statements made by Firth in an attempt to make his complaint into one cognizable under Title VII, and then undertook to prevent the defendant from discovering Firth's original statements. So much poison of bad faith is evident to the court through the aspects of this case which have been made visible to it that it is reasonable to assume that the poison permeates the aspects of this case which are invisible to this court.

■ The court finds that attorneys' fees are proper in this case for alternative reasons. The Supreme Court stated in the *Christiansburg Garment* case that a prevailing defendant may recover attorney's fees if the plaintiff's claim was "frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422, 98 S.Ct. at 701, 54 L.Ed. at 647.

In its original opinion, the court stated that the case was meritless and frivolous from its inception but based the award of

attorneys' fees on the finding that the EEOC continued to prosecute the case after it became obvious that there was no merit to its claim. Having reconsidered its original opinion, the court is convinced that there are sufficient factual findings from which the court should hold, as one alternative reason, that the case was meritless, frivolous, unreasonable and groundless from its inception. The court, therefore, specifically so holds, and further holds that the nature of the claim should have been obvious to anyone who reviewed Firth's initial intake statements. The court also holds, as another alternative, that the EEOC instigated and prosecuted this case in bad faith, for the reasons stated above.

As another alternative ground, the court finds that the EEOC continued to prosecute the case after it became obvious that there was no merit to its claim. The Regional Attorney of the EEOC knew of the weakness of the case after Firth's deposition. Although the parties submitted contradictory affidavits concerning statements Jerome Rose, Regional Attorney, allegedly made to Charles Powell, counsel for Shoney's, the court does not need to make a credibility judgment since Mr. Rose admits that he told Mr. Powell that Firth's deposition "might weaken our case" but that he did not know "whether that is all that we have to rely on." Affidavit of Jerome Rose. The EEOC had nothing else to rely on. It must be bound by the testimony of its charging party, and Firth's deposition does not support the contention that he protested that Pollock was discharged because of sex discrimination. The only thing submitted by the EEOC in opposition to the motion for summary judgment was Firth's deposition.[7] The court concludes that the Regional Attorney was aware—or certainly should have been aware after reading the Firth deposition—that the EEOC case was, at best, on shaky grounds. The trial counsel actually handling the case for the EEOC should have been even more aware of the

7. In support of its "Motion for Relief From Summary Judgment," filed March 12, 1982, the day of the hearing on the petition for attorneys' fees, the EEOC submitted Christi Pollock's dep-

osition. The Pollock deposition was previously considered by the court and it adds very little to Firth's statements, or at least nothing of significance to this inquiry.

lack of merit to this case well before the Firth deposition, but certainly after it was taken. Indeed, the course of conduct previously discussed indicates that the EEOC played games with the defendant in an attempt to divert attention from the lack of merit in the case. It is indeed deplorable that attorneys employed by the government, who should be knowledgeable in Title VII matters, apparently could not recognize this as a meritless case.

The EEOC has failed to explain, deny or mitigate its filing and continuation of this case with the lack of any evidence to show a *prima facie* case. This fundamental failure was compounded by the twisting of facts written into the charge, its deceitful suppression of the document that would reveal this twisting, its continuation of the case following the Firth deposition with full notice by the Regional Attorney of the effect of that deposition as weakening the case, its continued pursuit of irrelevant "comparative data" to prove retaliation, and its bad faith oscillation in position concerning the relevancy of the Pollock discharge. Added to this was the nagging stream of smaller problems occurring during the course of litigation, as previously discussed. From all of this, the court can only conclude that the suit was instituted and maintained in bad faith and without merit.

The court is thoroughly convinced that this is a most appropriate case in which to award attorneys' fees to the prevailing defendant, for any of the alternative reasons stated herein. The instigation of this lawsuit and particularly its continuation by the EEOC after it became blatantly clear that its claims were groundless is one of the most distressing events that has ever occurred in this court. It is most appalling that an agency of the federal government would conduct itself in such a questionable manner. As the Court of Appeals for the District of Columbia stated, "[f]rivolous suits such as the one brought here do not aid the cause of civil rights. On the contrary, they undermine the legitimate efforts of bringing legitimate suits, and draw scarce judicial resources away from those cases." *Harris v. Group Health Association,*

662 F.2d 869, 874 (D.C.Cir.1981). To discourage this kind of waste of court time and attorney time, and to further the congressional intent to deter frivolous suits, the court must grant meritorious fee petitions like the one presently before the court. *See Gayle v. Burke Rehabilitation Center,* F.Supp., 27 F.E.P. Cases 1733, 1735 (S.D.N.Y., January 6, 1982).

Having determined that attorneys' fees should be awarded the defendant, the question remains as to what award is reasonable. The EEOC originally did not submit anything challenging the reasonableness of the fees and expenses claimed by the defendant's attorneys. Now, in its motion to alter or amend filed April 16, 1982—more than two months after the defendant filed its petition for attorneys' fees with exhibits setting out the fees and expenses claimed— the Commission challenges the reasonableness of those fees and expenses. As previously stated, the EEOC erroneously assumed that the court would determine the amount of a reasonable fee separate from its determination to award a fee.

During the course of this litigation, Shoney's was represented by Mr. Charles Powell and Mr. Lewis Page of the firm of Lange, Simpson, Robinson & Somerville of Birmingham, Alabama, and by Mr. Jack King, Jr., of the firm of Trabue, Sturdivant & DeWitt of Nashville, Tennessee. The Trabue firm initially represented Shoney's during the administrative stage of Firth's charge. When suit was filed, the matter was referred to Lange, Simpson. Only work done and expenditures made in connection with the actual litigation filed by EEOC will be considered by the court in determining a reasonable fee award.

■ The Commission contends that it should not be liable for attorneys' fees incurred before August 26, 1981, when the deposition of Firth was taken, or before September 22, 1981, when the Regional Attorney reviewed the Firth deposition and "should have known" that its claim was without merit, based on the court's prior opinion. The *Christiansburg Garment* opin-

ion, which authorizes the award of attorney's fees when the plaintiff continues to litigate after it becomes clear that the case has no merit, does not state whether the plaintiff should be liable for all attorney's fees incurred from the beginning of the litigation. In any event, the court has withdrawn its prior opinion and has in this opinion specifically held that the plaintiff's case was meritless from the beginning and that the EEOC conducted itself in bad faith throughout this case. Under these alternative holdings, the plaintiff is liable to the defendant for its attorneys' fees incurred from the time the complaint was filed.

▆ The EEOC also challenges fees incurred which it claims relate to the Pollock charge. The court has previously addressed this attack and found it to be lacking in merit. Since the plaintiff continually vacillated in the position it took regarding the relevance of Pollock's discharge, counsel for the defendant had to be prepared to meet any argument the Commission might have tried to pursue. The plaintiff also would disallow one-half of the time spent by defendant's counsel in preparation of its opposition to the motion to consolidate the Pollock case with this one. The motion was filed jointly by Pollock's attorney and the EEOC.[8] If separate counsel represented Shoney's in the Pollock matter, the amount of time required of Shoney's attorneys in this present case to oppose the consolidation would not have been reduced. The court, therefore, will not order a reduction in time spent on the motion to consolidate.

Research done by associates of Lange, Simpson is also attacked by the plaintiff as unnecessary and irrelevant. Research was conducted regarding the legality of fraternization policies and spouse rules because the EEOC had requested in interrogatories to be supplied with any such rules which the defendant had in force.[9] Not knowing what position the EEOC would ultimately take regarding the legality of such policies, Shoney's attorneys needed to be prepared. Part of the job of a good defense attorney is to anticipate the plaintiff's arguments. This defendant's counsel did. The court finds such research to be indicative of the high degree of preparedness always exemplified by Mr. Powell and Mr. Page on behalf of Shoney's. It was necessary for them to anticipate the Commission's position since it so frequently changed, and since the Commission frequently filed its briefs the evening or morning before a hearing.

The plaintiff's challenge as to time spent objecting to discovery matters has been previously addressed by the court in this opinion. The court finds no merit in plaintiff's argument that such time should be excluded.

The EEOC also attacks an item on exhibits 4 and 4a filed by the defendant which is listed as a $40.00 reimbursement to Sandy Willingham for lost time. Since Miss Willingham was an employee of Shoney's, the Commission claims it should not be responsible for payment because any time lost by her was for Shoney's benefit. As explained by Mr. Page in his affidavit filed May 24, 1982, Miss Willingham was at the time a school teacher and part-time employee of Shoney's. The EEOC took her deposition on September 16, 1981. At the time Lange, Simpson made the reimbursement, January 8, 1982, the Commission had not paid Miss Willingham the witness fee and expenses due her for attendance at the deposition. The court finds that the EEOC cannot com-

---

8. Although certainly relevant to this case, the motion to consolidate was filed only in Ms. Pollock's case (CV 81–G–1681–S). The summary judgment granted in this case rendered the motion to consolidate moot.

9. The EEOC placed fraternization policies in issue by the following questions contained in Plaintiff's First Set of Interrogatories to Defendant, filed July 8, 1981:

7. Identify all policies, written and unwritten relating to employees dating one another since January 1, 1970 to the present.
8. Provide a list of all person(s) discharged for violating any of the policies identified in response to Interrogatory Number Seven . . . .
9. Provide a list of all person(s) who violated any policy listed in Interrogatory Number Seven and were not terminated . . . .

plain about this $40.00 reimbursement to a part-time employee of the defendant to whom it owed a witness fee for attendance at the deposition taken for the benefit of the Commission. In fact, the court finds that this delay in payment of Miss Willingham's fee is further evidence of the unprofessional manner in which it has conducted this suit.

In another meritless attack on the fees requested, the Commission contends that hours spent in seeking attorneys' fees should be deleted from the award. This position clearly conflicts with the law of this circuit. In *Johnson v. Mississippi*, 606 F.2d 635 (5th Cir. 1979), the Fifth Circuit held that attorney's fees may be awarded for time spent litigating the fee claims.

The EEOC contends that some expenses were duplicated in the attorneys' fees award and in the defendant's cost bill previously taxed against the plaintiff. The defendant, by affidavit of its attorney, Mr. Page, admits that the $272.50 [10] of the Bill of Costs it filed was duplicated in the expenses sought in the fee petition with the presumption that the fee award supersedes the costs award. Mr. Page further admits that the EEOC need not pay the amount twice. The court is not of the opinion that the fee award supersedes the cost award, and will therefore delete $272.50 from the amount claimed by the defendant, leaving the cost bill as is.

In a further challenge to the fees sought by the defendant, the Commission asserts that the defendant fails to meet at least ten of the twelve criteria of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). This statement reflects a lack of understanding of the use of those "twelve criteria." The Fifth Circuit set forth *guidelines* to be used in determining the amount of an attorney's fee award. The court did not mandate that a party must meet a specified number of the guidelines in order to recover a fee. In fact, the court stated

that "we do not attempt to reduce the calculation of a reasonable fee to mathematical precision. Nor do we indicate that we should enter the discretionary area which the law consigns to the trial judge." 488 F.2d at 720.

■ The court recognizes that the determination of a fee award should begin with the evaluation of the factors enumerated in the *Georgia Highway Express* case but views these factors as guidelines for the court's discretion in reaching a reasonable award. These guidelines are outlined and discussed below.

### 1. *The time and labor required.*

Although hours spent on a case should not be the sole basis for determining a fee, such should be considered. The court must weigh the hours claimed in light of its knowledge and experience with similar cases and the observation of counsel in the present case.

The actual time and labor expended in the defense of this litigation is as follows: Mr. Powell—59.5 hours; Mr. Page—138.6 hours; Mr. King—16.68 hours; Associates (research only)—39.3 hours; and Paralegals—3.4 hours. The court finds that such time and labor was necessarily expended and was reasonable under the circumstances, particularly since EEOC made the defense of the case so onerous.

### 2. *The novelty and difficulty of the questions.*

Although the court finally decided this case on issues which were not novel, the prudent representation of Shoney's required substantial research concerning several novel and difficult questions. One such area involved the question of whether enforcement of nonfraternization rules might constitute discrimination. Although such question was put in issue by EEOC's own interrogatories,[11] the EEOC totally evaded the

---

10. In his affidavit, Mr. Page actually refers to items of $70.00 and of $202.50, then erroneously states that the cost award was $202.50. He subsequently clarified the error in a letter to the court in which he stated that the correct amount of the cost award was $272.50.

11. *See* prior discussion at footnote 9.

question as to whether it contended that enforcement of such a policy is some violation of law. *See* EEOC Answer to Interrogatory 7(a). As previously discussed, counsel for Shoney's were justified in researching the question and, in fact, it would have been unwise to neglect the research of such.

3. *The skill requisite to perform the legal service properly.*

This guideline is one directed to the observation by the court of the work product, preparation and general ability of counsel as demonstrated before the court. Having observed Mr. Powell and Mr. Page and their work product, the court finds their skill, ability and preparation to be excellent. Both men are brilliant attorneys and their representation of Shoney's was of the highest quality, which justifies the fee award.

4. *The preclusion of other employment.*

No business was foreclosed to either of Shoney's counsel because of the magnitude of this case or conflicts of interest in representing Shoney's. Obviously, however, the time spent in behalf of one client consumes time that could have been spent on other clients. Accordingly, full recompense for time actually expended is essential.

5. *The customary fee.*

The actual fee paid or to be paid by Shoney's to its attorneys for the defense of this litigation totals $18,702.99. This fee was computed on an hourly basis by multiplying the hours worked by an hourly charge as detailed in the affidavits submitted by counsel. The court finds that the hourly rates of Mr. Powell and Mr. Page of

$90.00 and $70.00 [12] respectively are commensurate with fees customarily charged by lawyers of similar experience and reputation in the Birmingham legal community. Mr. King charged Shoney's at the rate of $75.00 per hour in 1980, and $80.00 per hour in 1981. The court is of the opinion that these hourly charges appropriately reflect the substantial reputation, experience and ability of the lawyers, as well as their ongoing relationship with their client.

The EEOC challenges the flat hourly rate charge by defendant's counsel as being inherently unreasonable since the same rate was charged for in-court and out-of-court time.[13] In support of its position, the Commission cites *Copeland v. Marshall*, 594 F.2d 244 (D.C.Cir.1978). Although the District of Columbia Court of Appeals did speak disapprovingly against an across-the-board billing rate, it remanded the case for the taking of additional evidence on that and other issues. Contrary to the interpretation given by the EEOC, the *Copeland* case did not forbid flat rates; instead the court, in remanding the case, stated:

> If the trial court is not satisfied that [single rate hourly billing] is the customary practice in this jurisdiction or in the case of this particular firm, or if additional information is needed concerning the details of this practice and its proper application to the fee request at issue here, the record should be supplemented so that any necessary adjustments in the award can be made.

594 F.2d at 254.

Not only is the *Copeland* case not binding on this court, the Fifth and consequently the Eleventh Circuits [14] have upheld fees based on a single hourly rate. *E.g., Morrow*

---

12. The court notes that, in Mr. Page's affidavit filed with the petition for attorneys' fees on February 8, 1982, he states that his standard hourly rate increased from $70.00 in 1981 to $80.00 in 1982. The court finds that Mr. Page's time is well worth $80.00 per hour.

Also, time spent by associates in research was billed at $45.00 and $40.00 per hour, and paralegal time was billed at $15.00 per hour. The court finds that these rates also are within the range of customary charges in the Birmingham legal community.

13. It should be noted that the EEOC does not challenge the reasonableness of the rate charged for work by Mr. Powell or Mr. Page *per se*—only that the same rate should not be charged for all work done.

14. The Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit in *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

*v. Finch,* 642 F.2d 823 (5th Cir. 1981); *Knighton v. Watkins,* 616 F.2d 795 (5th Cir. 1980). Further, this court has consistently awarded attorney's fees based on a single, average hourly rate. *See, e.g., Sharron v. Central States, Southeast and Southwest Pension Fund,* CV 80–G–0784–S (N.D.Ala., May 20, 1982); *Johnson v. University College of the University of Alabama in Birmingham,* CV 74–G–1378–S (N.D.Ala., September 25, 1981); *Coker v. Amoco Oil Co.,* CV 79–G–0373–S (N.D.Ala., May 18, 1981); *Crawford v. Jeff's Motors, Inc.,* CV 79–G–0747–S (N.D.Ala., Feb. 13, 1981). This is done in recognition of the fact that the great majority of law firms in the Northern District of Alabama, and particularly in Birmingham, charge their clients one hourly rate which is calculated to bring in a reasonable return for the time expended.[15] Further, the evidence presented clearly reflects that the single hourly rate is the billing procedure adopted by the Lange, Simpson and the Trabue law firms, and is the standard rate charged a corporate client.

The court further finds that the *Copeland* decision is not even persuasive authority for this court because it ignores the market factors on which a fee award under the *Georgia Highway Express* case is based. Unlike the District of Columbia Circuit, the Fifth Circuit has adopted an approach that takes into consideration relevant market factors. The importance of market analysis is particularly evident when considering the customary fee in the community for similar work.

Furthermore, if the court decided to require split fees, it would find the fees charged by defendant's excellent attorneys to be a reasonable rate for their out-of-court work and would be inclined to raise the rate charged for in-court work to at least $100.00 per hour. As explained by Mr. Page in oral argument, if the firm charged split rates for an attorney's time, they would be such as would average the charges now reflected in the flat rate fees. The court can, therefore, see no justification in awarding a fee based on different hourly rates when the end result would be about the same.

In light of all considerations, the court finds that the hourly rates charged by defendant's counsel are reasonable.

6. *Whether the fee is fixed or contingent.*

Shoney's was represented by attorneys charging on an hourly basis.

7. *Time limitations imposed by the client or the circumstances.*

Some of the work performed by Shoney's attorneys in this litigation was under extremely tight time limitations, primarily because of delays of the EEOC. The EEOC habitually filed briefs or pleadings with the court the evening or morning before a scheduled hearing. The Commission also delayed in responding to discovery requests. A prime example of such delay is the tardy answers to interrogatories[16] filed on December 10, 1981—the day before the hearing scheduled on the joint motion to consolidate this case with Christi Pollock's independent case (CV 81–G–1681). Those answers revealed that the EEOC took the position that Ms. Pollock's discharge was in no way relevant to the EEOC action on behalf of Firth. Shoney's attorneys thus had one day in which to prepare an amendment to the opposition to consolidate, a motion for summary judgment, and a motion to limit proof at trial, all of which were based, at least in part, on the plaintiff's answers to interrogatories. Even when counsel for the defendant were under such time restraints, everything submitted on behalf of the defendant has been of the highest quality.

15. This conclusion is drawn from the court's experience in other attorneys' fee petitions and from the knowledge gleaned as chairman of the Alabama State Bar's committee on reasonableness of fees for nine years before being appointed to the bench.

16. On November 10, 1981, the plaintiff was ordered to respond to the interrogatories within 10 days.

8. *The amount involved and the results obtained.*

The EEOC contends that the amount involved in this case was $2,500.00 or less. What the plaintiff totally ignores is that it also sought the reinstatement into a critical management position of an individual who Shoney's judged an unfit employee. This relief sought would be far more detrimental in the defendant's view than mere monetary relief. Defense counsel persuaded this court to grant summary judgment in favor of the defendant and to dismiss the case. Through the efforts of counsel, Shoney's has been vindicated of a charge that it violated Title VII of the Civil Rights Act of 1964. Counsel have thus earned the fees they claim.

9. *The experience, reputation and ability of the attorney.*

Mr. Powell has been practicing law since 1964 and is a partner in the prestigious firm of Lange, Simpson, Robinson & Somerville. He is well known for his knowledge and ability in the labor law field. Mr. Page, also a partner, has practiced law since 1973 and has demonstrated to this court his brilliance in several areas of law. The court has come to expect excellence from both of these attorneys and from their firm as well.

10. *The "undesirability" of the case.*

This factor has no bearing on the case.

11. *The nature and length of the professional relationship with the client.*

Both firms involved in the defense of this litigation have represented Shoney's in the past. The nature and length of the relationship is reflected in the hourly rates charged the client.

12. *Awards in similar cases.*

A number of recent cases have allowed attorney's fees in this range. *See e.g., Morrow v. Finch*, 642 F.2d 823 (5th Cir. 1981); *Jones v. Cleland*, 515 F.Supp. 212 (N.D.Ala., 1981); *Johnson v. University College of the University of Alabama in Birmingham*, CV 74–G–1378–S (N.D.Ala., Sept. 25, 1981).

Furthermore, other courts have awarded fees against the EEOC greater than those sought here. *E.g., EEOC v. St. Louis-San Francisco Railway*, 28 EPD 32,598 (N.D. Okla., Jan. 22, 1982) ($74,088.00 in attorney's fees plus $3,548.00 in expenses); *EEOC v. Union Camp Corp.*, 536 F.Supp. 64, 27 FEP Cases 1400 (N.D.Mich.1982) ($28,541.50 in attorney's fees); *EEOC v. Datapoint Corp.*, 457 F.Supp. 62 (W.D.Tex.1978) ($66,540.00 in attorney's fees).

The EEOC urges the court to exercise restraint in determining the amount of fees in this case because of the incentive created by its "deep pocket" to inflate billing charges. The court finds that the amount of fees requested by counsel is precisely the amount for which it billed Shoney's. Those fees have not been inflated. Further, the amount of attorneys' fees awarded here would be the same if awarded against a private entity.

The Commission further reminded the court that it is Congress' chosen instrument to enforce the law and vindicate public policy. Therefore, the Commission argues, the court should carefully scrutinize any awards against it. The court must conclude, however, that a governmental agency does not act in the public interest nor vindicate public policy when it files and vigorously prosecutes meritless cases and conducts itself in utter bad faith, as the EEOC did in this case. While enforcing the law, the Commission's attorneys should remember that they are not above the law nor the ethical considerations binding on all attorneys.

Further, the role of government is to protect all of its people. This even includes defendants in Title VII cases who should not be subjected to the unnecessary expense of defending meritless cases. As recognized by another court,

> [t]he government is a wealthy litigant and can, if it chooses, make litigation so expensive as to prohibit the defense of legal rights .... Because of the peculiar power of the government litigator, he is subject to ethical consideration beyond the ordinary litigator.

*EEOC v. Datapoint Corp.*, 457 F.Supp. 62, 65 n.9 (W.D.Tex.1978) (citations omitted). Certainly the Commission abused its power and ignored even those ethical considerations binding on the ordinary litigator by its conduct in this case.

Finally, the Commission cautions the court to remember that the purpose of allowing the award of attorney's fees to a prevailing defendant is primarily to deter frivolous lawsuits. Attorney's fees are also warranted in the face of bad faith conduct. The court has determined that not only did the EEOC file a frivolous and meritless case, it conducted it in bad faith. The award of attorneys' fees in this case is, therefore, more than justified.

The court has been aware throughout its consideration of this matter of the deterrent effect of an award of fees. The court is most desirous that the EEOC learn to carefully review and evaluate the merits of a charge before filing a case, and that it prosecute its cases in a competent, prudent and ethical manner. Perhaps the judicious and restrained use of this court's discretion in awarding a reasonable though not insubstantial attorneys' fee in this case will reduce the need for the court to repeat this exercise.

In conclusion, based upon all the facts and circumstances, and not being limited merely to the fact that the amount to be awarded is the result of a numerical calculation or represents the amount paid or to be paid by the defendant, the court finds that the prevailing defendant should be awarded attorneys' fees and expenses in the total amount of $18,430.39. Reflected in this sum is $1,263.15 in fees and $181.81 in expenses to the firm of Trabue, Sturdivant & DeWitt; and $16,985.43 in fees and expenses to the firm of Lange, Simpson, Robinson & Somerville. The court deleted from expenses claimed by Lange, Simpson the $272.50 already taxed as costs.

While this sum does not totally compensate the defendant for all attorneys' fees expended in the defense of this matter, nor does it compensate the defendant for the nonlawyer time and effort expended in the defense of the matter, such a sum represents an appropriate award in view of the relevant legal principles and is within the range allowed in other recent cases.

A separate order in conformity herewith will be filed contemporaneously.

## ORDER

This cause is presently before the court on plaintiff's motion to alter or amend the court's order of April 7, 1982. Having considered the submissions of counsel and the oral arguments presented, the court concludes that it should reconsider not only its order of April 7 but also its order of March 23, 1982. After reconsidering those prior orders, the court is of the opinion that the order and opinion of April 7, and the order and opinion of March 23 should be withdrawn, and that the defendant is entitled to a reasonable attorneys' fee of $18,430.39, for the reasons stated in the memorandum opinion filed contemporaneously. It is therefore

ORDERED, ADJUDGED and DECREED that this court's order and opinion of April 7, 1982, and the order and opinion of March 23, 1982, be and the same hereby are WITHDRAWN, and this order and the opinion filed herewith be SUBSTITUTED in their place; and it is

FURTHER ORDERED that the defendant's petition for allowance of a reasonable attorneys' fee be and the same hereby is GRANTED, and the plaintiff is ORDERED to pay directly to the defendant Shoney's, Inc., the sum of $18,430.39 as attorneys' fees and expenses incurred in the course of this lawsuit, said payment to be made within sixty (60) days of the entry of this order; and it is

FURTHER ORDERED that the defendant's petition to retax costs is hereby rendered MOOT; and it is

FURTHER ORDERED that the plaintiff's motion for relief from judgment filed May 14, 1982, is hereby rendered MOOT.